COMMONWEALTH of Pennsylvania,
Appellee,

v.

Timothy DODGE, Appellant.

Superior Court of Pennsylvania.

Argued May 13, 2004.
Filed Aug. 30, 2004.
Reargument Denied Oct. 29, 2004.

Leonard J. Frawley, Towanda, for appellant.

Stephen G. Downs, Asst. Dist. Atty., Towanda, for Com., appellee.

BEFORE: STEVENS, LALLY–GREEN and KLEIN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Timothy Dodge, appeals from the trial court's judgment of sentence dated February 19, 2002. We vacate the judgment of sentence and remand for further proceedings.

¶ 2 The Court of Common Pleas of Bradford County convicted Appellant on 37 counts of receiving stolen property, two counts of burglary, criminal trespass, possession of a small amount of marijuana, possession of drug paraphernalia, and un-authorized use of a motor vehicle. On appeal, Appellant claims, among other things, that his sentence was excessive.

¶ 3 The relevant facts and procedural history are as follows. On December 14, 1999, Pennsylvania State Trooper Russell Jenkins went to interview Appellant, at his home, in regards to an automobile accident. Trooper Jenkins detected a strong odor of marijuana on Appellant, and when Appellant refused to allow Jenkins to enter his home, Jenkins immediately obtained a search warrant for the residence and for Appellant's automobile. During the searches, the police discovered large amounts of stolen property in Appellant's residence and automobile. Appellant, who fled the jurisdiction, was ultimately arrested in Lancaster County, Pennsylvania in February 2000. At the time, Appellant was driving a stolen vehicle.

¶ 4 Criminal complaints were filed against Appellant in 2000 and ultimately consolidated for trial. Appellant's jury trial commenced on October 8, 2001. On October 19, 2001, Appellant was found guilty of the aforementioned charges. On February 25, 2002, the trial court sentenced Appellant to an aggregate sentence of 58 ½ to 124 years. On March 1, 2002, Appellant filed a post-sentence motion which was denied on March 8, 2002. The instant appeal followed. On April 5, 2002, the trial court directed Appellant to file a statement pursuant to Pa.R.A.P. 1925(b). Appellant filed a nine-page, handwritten statement on April 26, 2002, and the trial court filed an opinion.

¶ 5 Appellant raises the following issues on appeal:

1. Did any of the sentences exceed the statutorily established maximum sentence permitted by law?
2. Did the court, at sentencing, preclude the defense from submitting pertinent evidence?

3. Did the court abuse discretion in rendering the sentencing order?

4. Was impermissible other crimes evidence submitted at trial?

5. During summation, was reference made to significant evidence not of record?

6. Was a witness identification tainted by a prior improper identification?

7. Were three search and seizure warrants illegal and unconstitutional because of:
   a. Their applications description of items to the [sic] searched was too broad or
   b. Their affidavit [sic] of probable cause was inadequate or
   c. They were the fruit of a poisoned tree?

8. Did a search warrant affidavit of probable cause include factual distortions and exclude material facts?

Appellant's Brief at 6.

¶ 6 In his first three arguments, Appellant makes various challenges to the trial court's sentence. In his 1925(b) statement, Appellant wrote as follows:

The sentences of imprisonment imposed by the Court, both individually and collectively, are excessive. The aforementioned shall be raised on appeal. In his filed post-sentencing motions, Timothy Dodge set forth eight arguments in support of the above contention. On appeal, those arguments will be developed.

Appellant's 1925(b) statement at III(B). We do not condone Appellant's incorporation by reference of other documents in his 1925(b) statement. A 1925(b) statement should include a concise statement of each issue to be raised on appeal without reference to other documents. Nonetheless, the arguments Appellant raises with regard to this sentencing are largely the same as those he raised in his post sentence motions. The trial court understood the issues Appellant raised with regard to his sentence, and referred us to portions of the record in which the court addressed Appellant's arguments. Therefore, Appellant's 1925(b) statement has not hampered review of the sentencing issues.[1]

¶ 7 In his first issue, Appellant purportedly argues that the sentences exceeded the statutory maximum. Our review of Appellant's brief reveals that Appellant is actually challenging the sufficiency of the Commonwealth's evidence. Appellant claims that the Commonwealth proved only one count of receiving stolen property. Appellant cites no case law in support of this argument, nor does he direct our attention to portions of the record that support it. Accordingly, Appellant has waived his first argument. Pa.R.A.P. 2119(b); *Commonwealth v. Garcia*, 443 Pa.Super. 414, 661 A.2d 1388, 1395 (1995).

¶ 8 Appellant's next argument is that the court erred in precluding certain evidence at sentencing. The court ordered a psychiatric evaluation of Appellant for use at sentencing. Appellant claims that he did not receive a copy of the doctor's report until the last business day before the sentencing. Appellant's Brief at 14. Appellant sought a continuance of the sentencing so that he could have a psychologist of his own choosing address the report. The Rules of Criminal Procedure provide that a court-ordered psychiatric report shall be disclosed to the defendant and that the defendant shall have the opportunity to address any factual inaccuracies in a court-

---

1. We further note that Appellant's brief includes a concise statement of reasons for allowance of appeal with respect to the discre-tionary aspects of his sentence, in accordance with Pa.R.A.P. 2119(f). Appellant's Brief at 16–17.

ordered psychiatric examination. Pa. R.Crim.P. 703(A)(2), (B). The comment to the Rule provides as follows:

> The disclosure provisions contained in paragraph (A)(2) and paragraph (B) are not intended to encourage formal litigation over confidential reports, but should avoid such litigation by affording counsel for both parties full disclosure of reports and the opportunity to point out any inaccuracies before the judge imposes sentence. **Disclosure under paragraph (A)(2) should be made in sufficient time for counsel to prepare for the sentencing hearing.**

Pa.R.Crim.P. 703, comment (emphasis added).

¶ 9 Thus, the rules require that Appellant receive any report in time to prepare for the hearing. On remand, we direct the trial court to ensure that Appellant receives any report in sufficient time to prepare for the remand hearing.

¶ 10 In his third argument, Appellant claims that the trial court abused its discretion in handing down the sentence. Before we reach the merits of a challenge to the discretionary aspects of a sentence, we must determine: "(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a

fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b)." *Commonwealth v. Petaccio,* 764 A.2d 582, 586 (Pa.Super.2000). An appellant who fails to raise an objection to the discretionary aspects of his sentence at the sentencing or in a post-sentence motion waives the objection. *Id.*

¶ 11 Since Appellant has met the first three requirements, we address whether Appellant has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. Our Supreme Court recently ruled, in a plurality opinion written by Justice Nigro, that a challenge to the discretionary aspects of a sentence based on a claim of excessiveness of a sentence within the statutory limits may raise a substantial question that the sentence is inappropriate under the Sentencing Code.[2] *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 624 (2002). There, appellant argued that a sentence within the statutory legal limits, but beyond the aggravated range of the sentencing guidelines, was excessive. The Supreme Court unanimously rejected this Court's per se rule that excessiveness claims do not raise a substantial question so long as the sentence is within the statutory limits.[3] Justice Nigro observed that, under § 9781(c) of the Sentencing Code, the "Superior Court is required to vacate sentences that are outside of the Guide-

---

2. Justice Nigro authored the lead opinion, in which Chief Justice Zappala and Justice Cappy joined; Justice Newman and Justice Saylor concurred, and Justices Castille and Eakin dissented. Justice Castille and Justice Eakin argued that a mere allegation of excessiveness "is not self-proving," *i.e.,* the mere invocation of the term "excessive sentence" does not raise a substantial question that there was an unreasonable application of governing sentencing precepts in a particular sentence. *Mouzon,* 812 A.2d at 628.

3. Our esteemed colleague in the Dissent leads the reader to believe that we said that the *Mouzon* Court did conclude that a substantial question had been raised. Dissent, at 784–85. We respectfully disagree. The text of this Majority Opinion makes clear that *Mouzon* "may" have raised a substantial question and that our Supreme Court refused to adopt the Superior Court's per se rule.

lines if they are 'unreasonable,' and is also required to vacate sentences within the Guidelines if they are 'clearly unreasonable.'" *Id., citing,* 42 Pa.C.S.A. § 9781(c). The *Mouzon* Court also stated that a substantial question is raised when the claim of excessiveness is that the sentence is "so manifestly excessive as to constitute too severe a punishment." *Id.*[4]

¶ 12 This Court, following *Mouzon,* recently concluded that claims that sentences of statutory maximums were excessive under the circumstances raised substantial questions under the Sentencing Code. *See, Commonwealth v. Walls,* 846 A.2d 152 (Pa.Super.2004) and *Commonwealth v. Caraballo,* 848 A.2d 1018 (Pa.Super.2004) (both discussed *infra* ).

¶ 13 Here, Appellant's claim of excessiveness relates to the total sentence of 58½ to 124 years for, primarily, property crimes. While his individual sentences were in the standard ranges for each of his convictions, his excessiveness claim focuses on the consecutive nature of the sentences. In light of *Mouzon, Walls* and *Caraballo,* we conclude that Appellant's claim of excessiveness respecting his aggregate sentence of 58½ to 124 years raises a substantial question whether, under the Sentencing Code, Appellant's sentence was "so manifestly excessive as to constitute too severe a punishment." *See, Mouzon,* 812 A.2d at 624.[5]

¶ 14 Having concluded that Appellant has raised a substantial question, we next address the merits of Appellant's claim that the trial court abused its discretion in imposing a total sentence that was excessive or "clearly unreasonable" under the circumstances of his case. We first ob-serve that § 9781 of the Sentencing Code sets out the appropriate standard for appellate review of a sentence as follows:

**§ 9781 Appellate review of sentence. . . .**

(c) **Determination on appeal.**—The appellate court shall vacate a sentence and remand the case to the sentencing court with instructions if it finds: . . .

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

(d) **Review of record.**—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(c), (d). Also, we note that § 9721(b) of the Sentencing Code requires the trial court to impose a sentence in light of the following: protection of the public; the gravity of the offense as it relates to the impact on the life of the victim and on the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b).

---

4. We note that while all of the Justices agreed that a claim of excessiveness may give rise to a substantial question, the Justices were divided as to whether the Appellant had done so.

5. We observe that our distinguished colleague in the Dissent does not address this *Mouzon* test.

¶ 15 Next, we address *Walls* and *Caraballo*. In *Walls*, the appellant challenged as excessive his sentences for rape and involuntary deviate sexual intercourse. The sentences were for the statutory maximum and, thus, outside the aggravated range of the sentencing guidelines for both crimes. While the sentence for an incest charge was in the standard range, all three sentences were imposed to run consecutively. Accordingly, the total sentence was for 21–61 years of imprisonment. *Walls*, 846 A.2d at 154.

¶ 16 The *Walls* Court vacated the sentence and remanded for resentencing, concluding that the sentencing court's reasoning "severely calls into question whether the sentence was individualized to this particular case and to this particular defendant." *Id.* at 159. The Court observed that the record reflected that the sentencing court seemed to have "an agenda against sex offenders that involves imposing the maximum sentences allowed by law regardless of the individual circumstances of the case." *Id.* Thus, the trial court had abused its discretion in imposing an unreasonable sentence.

¶ 17 The *Walls* Court directly addressed the amount of deference that the appellate court must give to the trial court under § 9781. The Court explained that sentences must be reviewed to "ensure not only a fair and impartial sentence under the circumstances, but also to protect against grossly disparate treatment of like offenders throughout the Commonwealth." *Id.* at 157, *quoting, Commonwealth v. Smart*, 387 Pa.Super. 518, 564 A.2d 512, 514 (1989). The Court disagreed with the assertion that appellate review of sentencing is limited to a review of whether the trial court places reasons on the record for departing from the guidelines. Rather, the Court said, the Superior Court must review the trial court's reasons for the sentence to determine whether the sentence is unreasonable as guided by the standards of 42 Pa.C.S.A. § 9781(d) and case law. The *Walls* Court then instructed trial courts to fashion sentences in light of the factors set out in the guidelines, 42 Pa. C.S.A. § 9721(b), and the purposes of the penal system.[6] *Id.* at 157–61.

¶ 18 In *Caraballo*, the defendant was sentenced to two consecutive statutory maximum sentences for two counts of attempting to lure a child into a motor vehicle. The Court concluded that the trial court "fell far short" of meeting the test for reasonableness under § 9781(c) and, therefore, vacated the sentence and remanded for resentencing.

¶ 19 Since Appellant's claim is one of excessiveness, the principles of *Mouzon*, *Walls* and *Caraballo* apply with equal force to situations in which the trial court imposes standard range sentences in a consecutive fashion.[7] Our statutory obli-

---

6. The *Walls* Court generally stated that the sentence should accommodate the purposes of the penal system: protection of society, general deterrence, individual deterrence, rehabilitation, and "retribution (punishment, vengeance, desserts)." *Walls*, 846 A.2d at 159–60. The Court explained that a sentence that focuses solely on the punishment end, *i.e.*, retribution/vengeance/protection of the public, may be an implicit rejection of the Sentencing Commission's assessment of an appropriate sentence. In essence, the Court concluded, the sentence cannot be excessive, disproportionate, or unwarranted under the circumstances of the case. *Id.*

7. Our respected colleague in the Dissent chooses to disregard *Walls* and *Caraballo*, arguing that this Court in *Walls* and *Caraballo* "substitute[d] its own findings of fact for those facts found by the sentencing judge..." Dissenting Opinion, at 785. This Court, however, cannot disregard these cases because they deal with an issue very similar to the one presented here. And, even assuming we do disagree with the conclusions of those cases, we nevertheless are to give them appropriate

gation is to review the record to determine whether, under § 9781(c)(2), the sentence is "clearly unreasonable." As appellate court judges, we can not sidestep our statutory obligations under § 9781(c). While our highly regarded colleague in the Dissent may disagree with the wisdom of § 9781(c), such disagreement cannot substitute for our efforts as a court to comply with § 9781(c). Thus, we disagree with the dissent's assertion that we are engaging in legislative policymaking. The dissent argues that "[t]he 'clearly unreasonable' test can become but a reflection of the subjective predilection of an appellate court judge for leniency based merely on the type of crime." Dissenting Opinion, at 787. We respectfully disagree, because under § 9781(c), we must review the trial court's sentence using the "clearly unreasonable" test in this case.

¶ 20 The phrase "clearly unreasonable" was addressed in *Commonwealth v. Moore*, 420 Pa.Super. 484, 617 A.2d 8 (1992). There, the Court quoted *Commonwealth v. Drumgoole*, 341 Pa.Super. 468, 491 A.2d 1352, 1354 (1985), where the Court said:

> "[t]he legislature has provided that the appellate court, in reviewing the discretionary aspects of a sentence on appeal, shall affirm the trial court's sentence unless it finds: (1) that the guidelines were erroneously applied; (2) that the sentence, even though within the guidelines, is "clearly unreasonable"; or (3) that the sentence, if outside the guidelines, "is unreasonable." In any one of

these three circumstances, we are required to vacate the trial court's sentence and remand the case with instructions. 42 Pa.C.S.A. § 9781(c). In determining whether a particular sentence is "clearly unreasonable" or "unreasonable," the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the presentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence."

*Moore*, 617 A.2d at 9.

¶ 21 The record reflects the following. Appellant was sentenced on a number of convictions including two counts of burglary (neither of which involved violence toward a person),[8] one count each of unauthorized use of an automobile, possession of drug paraphernalia and possession of a small amount of marijuana, and 37 counts of receiving stolen property. The total sentence was 58½ to 124 years.

¶ 22 The crime of receiving stolen property, in Appellant's case, was classified as a felony of the third degree, not because of the value of the items taken but because Appellant was "a receiver in the business of buying or selling stolen property." 18 Pa.C.S.A. § 3903(a).[9] Appellant was convicted of being a "receiver in the business" 37 times, once for each victim (*i.e.,* house-

---

deference as they are announced opinions of this Court.

**8.** We observe that one burglary was of a cigarette machine in a public establishment.

**9.** 42 Pa.C.S.A. § 3903(a) provides:
(a) **Felony of the third degree.**—Theft constitutes a felony of the third degree if the

amount involved exceeds $2,000, or if the property stolen is a firearm, automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.

hold).[10] The sentence for the 37 counts of receiving stolen property was 620 to 1,332 months or 52 to 111 years, which is 88% of the total sentence. This occurred because the standard range sentences of 17 to 36 months per count ran consecutively 37 times. Thus, 88% of the sentence focused on 37 convictions of receiving stolen personal property.

¶ 23 Appellant was 42 years old at sentencing. The minimum of the total sentence, 58½ years, meant that he minimally would be in prison until age 100½. The minimum of the sentence for the 37 counts of receiving stolen property meant that he would be in prison until age 94. Our learned colleague in the Dissent neither addresses, nor mentions, the length of the sentence.

◼ ¶ 24 Judge Stevens also argues in his Dissent that we should defer entirely to the trial court when the issue is the consecutive nature of a sentence. We do defer to the trial court in the vast majority of the cases when sentences are applied in a consecutive fashion; however, such deference is not unchecked. Under § 9781(c), we are to determine whether the trial court was clearly unreasonable in the crafting of Appellant's sentence. We do

not, and indeed cannot, rubber stamp all consecutively-run sentences; § 9781 and relevant case law do not permit that.[11] The trial court's exercise of discretion in sentencing is subject to the mandates of § 9781 and our case law.

¶ 25 The trial court addressed the claim of excessiveness in a rather cursory fashion in its order of March 5, 2002, which denied post-sentence motions. The court said:

> Relative to Count II, the sentence imposed was not excessive considering the number of offenses for which the Defendant was sentenced. In fact, the sentence was within the standard range of the sentencing guidelines.

March 5, 2002 Order, p. 2.

¶ 26 The transcript of the sentencing hearing reflects a more developed explanation for the sentence, as follows:

> THE COURT: Anything else?
>
> TIMOTHY M. DODGE: No, sir.
>
> THE COURT: Mr. Dodge, in these cases, I have considered your age, the information about you that is in the presentence investigation report, the information that's been related here this afternoon by your attorney, as well as the evidence of the circumstances of the of-

---

10. The record reflects that the stolen property Appellant was convicted of receiving included medals, tools, guns, real and costume jewelry, among other items. Indeed, the Commonwealth produced as a witness a jeweler who testified that 90% of the jewelry he reviewed was costume jewelry with a value of less than $20.00 per item. N.T., 10/12/01 a.m., at 103–04, 110. The record fails to reflect a fair market value for each individual item. Rather, the jury issued findings as to the aggregate per household value of stolen items. While one or two of the stolen items may have had a value of over $2,000.00, the jury findings and the record make clear that the vast majority did not. Some had little or no value, as reflected in the record and the jury findings.

11. The Dissent relies on *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), in support of its position that the sentence can not be attacked. In *Ewing*, the Supreme Court upheld California's three strikes law. Effectively, the Court affirmed the life sentence of a repeat offender whose "third strike" was the theft of some golf clubs. We believe *Ewing* is inapposite, in that the Supreme Court determined that the California legislation did not offend the Constitution. The Pennsylvania legislature has not enacted a law creating life sentences for repeat offenders. Further, the Pennsylvania legislature has imposed a duty on appellate judges under § 9781(c) that we are obligated to perform. Thus, we believe that the Dissent's use of *Ewing* is misplaced.

fenses. The facts as to your personal background and circumstances are found to be as set forth in the pre-sentence report and apparently are not in dispute. The facts of the offenses have been established by the verdicts of guilty. In addition, I have considered your prior criminal record, your personal characteristics, your potential for rehabilitation, and all the available alternatives to total confinement, including any factors weighing in favor of probation or partial confinement. After considering all these factors, I find that a sentence in the standard range of the sentencing guidelines is appropriate, because I find that there is an undue risk that during any period of probation or partial confinement, you will commit another crime, that you are in need of correctional treatment and rehabilitation that can best be provided by your commitment to an institution and that a lesser sentence would depreciate the seriousness of your crimes. I, therefore, find that a sentence to total confinement is proper.

. . .

These sentences imposed in this order shall be served consecutively with each other. It is the intention of the Court hereby that the Defendant's total period of confinement shall be not less than fifty-eight and one-half years, nor more than one hundred and twenty-four years and he shall stand committed in a state correctional facility until the said sentence is served in full.

. . .

The Court believes that the sentences imposed are consistent with the protection needs of the public, the gravity of these offenses as they impact on the lives of the victims and on the community and on the rehabilitative needs of the Defendant. The sentences do fall in the standard range of the sentencing guidelines and are appropriate for the reasons already stated on the record.

They're also appropriate because Mr. Dodge's criminal activity began at age sixteen, and has continued almost without interruption to the present. He is clearly a career criminal. In addition to crimes of the nature of thievery, he has been arrested and convicted of drug offenses, and the offenses of reckless endangerment, criminal impersonation and escape. Bradford County has expended vast amounts of time, energy and resources in efforts to rehabilitate Mr. Dodge in the past. All to no avail. He has, it appears, little concern even for family members, since he enlisted their aid in concealing his whereabouts from law enforcement agencies resulting in the prosecution of at least two of the members of his family. The only way to prevent this Defendant from committing crimes and further victimization innocent people is to keep him incarcerated. Furthermore, the Defendant has demonstrated no regret and no remorse. The only emotion he showed during the course of the trial, when victim after victim took the stand and broke down because of the sentimental value of many of these things that were taken, Mr. Dodge showed no emotion. The only time that this Judge detected any emotion from Mr. Dodge was when his sister was testifying and when Mr. Frawley was giving his opening statement, in which he quite properly asked the Jury to wait for all the evidence and for the rest of the story, so to speak.

The sentences imposed today comply with the recommendation of the Bradford County Probation Office. These sentences recognize the true rest of the story, that Mr. Dodge has been engaged in criminal activity as an adult since

1978. That his criminal activity while occurring mostly in Bradford County, also occurred in Broome and Tioga Counties in New York, and in Lancaster and Lycoming Counties in Pennsylvania. That the criminal activities range from numerous summary retail theft offenses to misdemeanor theft, recklessly endangering, fleeing and eluding, criminal trespass, drug and larceny offenses, two felony escape, theft and burglary offenses. He's never held significant employment. His vocation for many years, obviously, has been professional thief. The criminal justice system has repeatedly tried to rehabilitate him to no avail. It is apparent that rehabilitation and community supervision has not, and will not, work. The only thing that will protect the public from further preying by this life-time professional criminal thief and predator is long-term incapacitation in prison.

Trial Court Transcript, N.T., 2/19/02, at 28, 29, 31, 32, 33, and 34.

¶ 27 Our review of the record reflects a number of reasons why Appellant received the standard range sentences he received. The court explained how it imposed a standard range sentence based on Appellant's past history of criminal conduct, the quantity of the convictions, and Appellant's lack of remorse.

¶ 28 Our review of the record also reflects three additional considerations. First, the judge appears to have had a fixed purpose of keeping Appellant in jail for his life. ("The only thing that will protect the public from further preying ... is long-term incapacitation in prison.") See, the Trial Court Transcript, supra. Second, while the trial court addressed the impact of the crimes on the victims and the community, the court does not, on the record, engage in a meaningful analysis of the gravity of the offenses. Here, the court imposed a minimum sentence of 52 years for 37 counts of receiving personal property, all property crimes, many of which involved property of little monetary value.[12] These were not crimes against the person, and the two burglary convictions involved no violence involving a person. Third, while the trial court did address the recidivism of Appellant, it did not address the rehabilitive needs of Appellant. The record further fails to reflect whether this sentence was appropriate as a function of "the particular circumstances of the offenses involved." See, Moore, 617 A.2d at 9. We are thus constrained to conclude that the sentence was "clearly unreasonable."

¶ 29 We, therefore, vacate the trial court's judgment of sentence and remand to the trial court for re-sentencing in light of Walls, Caraballo, and Mouzon and the discussion set forth above. In fashioning a new total sentence, the trial court is to include meaningful consideration of "the particular circumstances of the offenses involved." The trial court is also to address, when fashioning the sentence for the 37 counts of receiving stolen property, whether some, if not many, of the sentences more appropriately should run concurrent to others. We make clear, however, that Appellant's sentence is "clearly unreasonable" in light of the record in this case. The trial court is to accompany its new sentence with a detailed explanation, grounded in the record, for its total sentence. Should Appellant take another appeal, he should ensure that all pertinent information, including the presentence report, is attached to the record sent to this Court.

12. See note 10, supra.

¶ 30 We emphasize that Appellant's case is a most unusual case. We do not purport to announce any sort of blanket, *per se* rule covering all cases involving the application of consecutive sentences. A trial court's justifications for consecutively-run standard range sentences are, in almost all cases, more than reasonable in the circumstances. On the other hand, this Court must ensure that a trial court does not violate the Sentencing Code by imposing a clearly unreasonable standard range sentence. 42 Pa.C.S.A. § 9781(c)(2). This statutory obligation embraces a duty to examine, in appropriate circumstances of a particular case, whether the imposition of consecutive sentences in the standard range violates the requirements and goals of the Code and of the application of the guidelines.[13]

¶ 31 We further emphasize that a mere allegation that consecutive sentences are excessive or "clearly unreasonable" will not be sufficient to raise a substantial question warranting appellate review. Rather, appellants must demonstrate a substantial question that the sentencing court has violated the letter and spirit of the Sentencing Code, *i.e.*, that the sentence is "so manifestly excessive as to constitute too severe a punishment." *Mouzon*, 812 A.2d at 624. This decision is not the "sweeping change in our law" that our respected colleague in the Dissent makes it out to be. Dissenting Opinion, at 785. It is merely an application of existing law to a most unusual set of circumstances.

¶ 32 Appellant next argues that the trial court engaged in improper double sentencing. Appellant's Brief at 20. The Sentencing Code provides that persons who are in the business of receiving stolen property commit a felony of the third degree. 18 Pa.C.S.A. § 3903(a.1). Otherwise, receiving stolen property is a first-degree misdemeanor. 18 Pa.C.S.A. § 3903(b). Appellant argues that the trial court relied on 35 instances of receiving stolen property to establish that Appellant was in the business of receiving stolen property. Appellant apparently argues that it was improper for the court to rely on each of the 35 instances to establish an element of the gradation and then issue a separate sentence for each offense. Appellant claims that this is double sentencing. We note that Appellant has cited no

---

**13.** Appellant's case is markedly different from the circumstances underlying our Court's recent announcement in *Commonwealth v. Boyer*, 856 A.2d 149 (Pa.Super.2004). In *Boyer*, the defendant challenged a 26 to 100 year sentence as manifestly excessive. There, Boyer was convicted of one count of conspiracy to commit robbery, two counts of robbery, one count of burglary, and two counts each of terroristic threats, unlawful restraint, and simple assault. Boyer and his two co-defendants forcibly entered the home of an elderly couple. Boyer, armed with a pellet gun, threatened to shoot the victims, tied them up with duct tape, and stole a large amount of money.

The *Boyer* Court held that the aggregate sentence was not excessive. The Court noted, *inter alia*, that Boyer had been sentenced to a series of standard range guidelines sentences, with all terms running consecutively. The Court held that the decision to impose consecutive sentences was not an abuse of discretion.

In Appellant's case, the record reflects no violence against any person and no criminal activity paralleling that of *Boyer*. We do not read *Boyer* as announcing a per se rule that we never examine the consecutive nature of a standard range sentence. Likewise, Appellant's case is not to be read as announcing a rule that a challenge to the consecutive nature of sentences always raises a substantial question or constitutes an abuse of discretion. We all are cognizant that sentencing can encompass a wide variation of factual scenarios. Thus, we make clear again that these issues must be examined and determined on a case-by-case basis.

authority in support of this proposition. Therefore, he has waived it. Pa.R.A.P. 2119(b); *Garcia.* In any event, this issue is moot in light of our remand for re-sentencing.

¶ 33 In his fourth argument, Appellant claims that the trial court erred by admitting into evidence and publishing to the jury a list that allegedly contained other-crimes evidence. Appellant properly raised this issue in paragraph II(C) of his 1925(b) statement.

¶ 34 Admissibility of evidence is a matter addressed to the sound discretion of the trial court and may be reversed only upon a showing that the court abused its discretion. *Commonwealth v. Minerd,* 562 Pa. 46, 753 A.2d 225, 229 (2000). The Pennsylvania Rules of Evidence provide that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). Rule 404(b)(2) provides that evidence of other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2).

¶ 35 Our review of the list in question reveals that it is largely unintelligible. It consists of numerous sentence fragments and badly misspelled and indecipherable words. Assuming *arguendo* that the trial court erred in admitting the list, we conclude that the error was harmless. *Commonwealth v. Drummond,* 775 A.2d 849, 853 (Pa.Super.2001). Appellant's fourth argument fails.

¶ 36 In his fifth argument, Appellant challenges a statement the prosecutor made during summation. Appellant fails to cite any authority in support of his argument, and the argument itself is borderline incomprehensible. For these reasons, Appellant has waived this argument.

Pa.R.A.P. 2119(b); *Commonwealth v. McMullen,* 745 A.2d 683, 689 (Pa.Super.2000).

¶ 37 In his sixth argument, Appellant claims that the trial court erred in failing to grant his motion for a mistrial following the identification testimony of prosecution witness Joseph Wesneski. Appellant sufficiently raised this issue in paragraph II(H) of his 1925(b) statement. Appellant fails to cite any law or make any argument for the proposition that the identification in question was unduly suggestive. Failure to sufficiently explain a claim results in waiver. *Commonwealth v. La-Cava,* 542 Pa. 160, 666 A.2d 221, 235 (1995). Therefore, Appellant has waived this argument.

¶ 38 In his seventh and eighth arguments, Appellant argues that the trial court erred in denying portions of his Omnibus Pretrial Motions. Appellant alleges a variety of legal deficiencies with regard to four search warrants.

¶ 39 Before we reach the merits of issues seven and eight, we must once again address Appellant's 1925(b) statement. In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that appellants must file a Concise Statement of Matters Complained on of Appeal pursuant to Pa.R.A.P. 1925(b), when the trial court orders them to do so. The Court stated:

> The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.

*Lord,* 719 A.2d at 308.

¶ 40 "When a court has to guess what issues an appellant is appealing, that

is not enough for meaningful review." *Commonwealth v. Thompson*, 778 A.2d 1215, 1223 (Pa.Super.2001) (internal quotations omitted). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super.2000).

¶ 41 In his 1925(b) statement, Appellant simply noted that he was challenging all decisions of the trial court in regard to his pretrial motions. The trial court concluded that the 1925(b) statement was too vague to inform the court of Appellant's arguments. We agree, and conclude that Appellant has waived issues seven and eight. *Commonwealth v. Dowling*, 778 A.2d 683, 686–87 (Pa.Super.2001).

¶ 42 In summary, we agree with Appellant that his sentence is excessive. We vacate the judgment of sentence and remand for re-sentencing in accordance with the principles set forth above. While it is not this Court's function to dictate a sentence, we do note that our chief concern lies in the consecutive nature of the court's current sentencing scheme. On remand, the court should give serious consideration to imposing at least some of Appellant's theft sentences concurrently, rather than consecutively. Appellant's other arguments lack merit and/or are waived.[14]

¶ 43 Judgment of sentence vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 44 Judge STEVENS files a Dissenting Opinion.

---

**14.** At page 28 of his brief, Appellant argues that the trial court improperly admitted certain testimony. Appellant has waived this argument for failure to include it in his state-

## DISSENTING OPINION BY STEVENS, J.:

¶ 1 I respectfully dissent and would affirm the sentencing court.

¶ 2 In the case at bar, Appellant was convicted of over forty separate charges, and his criminal activity, which occurred over many months, encompassed two states and several counties within Pennsylvania. Despite this, the Majority seeks to remand this matter for a more "reasonable" sentence, finding that the sentencing court did not engage in "a meaningful analysis of the gravity of the offenses." (Maj. p. 781). I disagree.

¶ 3 The sweeping policy decision of the Majority will hamper the ability of our trial judges to exercise their discretion in sentencing. In short, the Majority is taking away the discretion of sentencing judges to impose consecutive sentences in the standard range merely because the crime involves property offenses.

¶ 4 Relying on a plurality opinion in *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002), the Majority holds that consecutive sentences for property crimes, although each within the standard range, are, as a matter of law "excessive" because the crimes are not violent. Yet, *Mouzon* itself does not make any such declaration, and merely holds that a claim that a sentence that is within the statutory limit can raise a substantial question as to whether the sentence is excessive. *Mouzon*, 571 Pa. at 435–36, 812 A.2d at 627–28.

¶ 5 The plurality in *Mouzon* did not find that Mr. Mouzon had raised a substantial question as to the excessiveness of his sentence, or that his sentence was excessive, but only held that this Court could

---

ment of questions and because he fails to support it with pertinent case law. Pa.R.A.P. 2116, 2119(b).

not adopt a *per se* rule that such claim could never raise a substantial question. *Id.* There is simply nothing in *Mouzon* that leads to the sweeping change in our law announced by the Majority and the Majority can cite to no law, or even to our Constitution, which would justify this change. It is for the legislature, not the courts, to set the range of sentences for crimes, and it is for the sentencing judge, not the appellate court, to make, within the bounds of the law, the decision as to what sentence the criminal shall receive. The bounds of the law were not broken in the within case. There is a valid conviction for each and every sentence ordered by the sentencing judge in the instant matter.

¶ 6 It is not the role of the appellate court to engage in fact-finding, in large part, because we are not in a position to make assessments of credibility. Yet, the Majority here, as in *Commonwealth v. Walls*, 846 A.2d 152 (2004),[15] and *Commonwealth v. Caraballo*, 848 A.2d 1018 (2004),[16] substitutes its own findings of fact for those facts found by the sentencing judge, determines which of the factors enumerated in 42 Pa.C.S.A. § 9721(b) should be accorded the most weight, and offers personal viewpoints about the appropriate lengths of sentence for certain crimes.

¶ 7 The Majority implies that the sentencing judge was biased against Appellant but points to nothing in the record to justify that conclusion. (Maj. p. 781). The trial judge appropriately pointed out in the record that the crimes were serious, that there were victims, that Appellant had an extensive record extending back over twenty-six years, that Appellant had not proved amenable to rehabilitation, that the charges against him included two charges relating to his escape, that he had involved members of his family in his escape, leading to charges being filed against them, and that he did not show remorse.

¶ 8 Clearly, appropriate, albeit negative, comments by the sentencing judge about the defendant's crimes do not by themselves rise to bias. Otherwise, trial judges could never explain their reason for the sentence, thus risking reversal for not putting on the record the reasons for the sentence. *See* 42 Pa.C.S.A. § 9721(b).

¶ 9 The Majority makes much of the fact that Appellant was convicted of non-violent offenses [17] and that the property involved had little monetary value. However, the Majority fails to acknowledge the sentencing court's observation that "victim after victim took the stand and broke down because of the sentimental value of many of these things that were taken." N.T. 2/19/02 at 28–34. Thus, that lack of monetary value does not mean that the victims suffered no harm. In the instant case the sentencing judge found Appellant to be a career criminal and fashioned a sentence for each particular conviction, a matter within the discretion of the sentencing judge.[18]

15. In *Walls*, the defendant was sentenced on three separate charges, two of the sentences were above the aggravated range and one was in the standard range; the sentences were to be served consecutively. *Walls*, 846 A.2d at 154.

16. In *Caraballo*, the defendant was sentenced above the aggravated range on two charges; the sentences were to be served consecutively. *Caraballo*, 848 A.2d at 1020.

17. While Appellant was not convicted of any crimes of violence, the Majority ignores the fact that among the stolen property received by Appellant were firearms. The traffic in illegal firearms, and the violence caused by those in possession of illegal firearms, is a serious problem in our society. Appellant's role in that traffic and its facilitation of violent crime should not be minimized.

18. I note that neither *Walls* nor *Caraballo* is directly on point because, unlike in *Walls* and *Caraballo*, Appellant was sentenced in the

¶ 10 The Majority denigrates the seriousness of property offenses and ignores the fact that Appellant received a lengthy sentence not because he committed property offenses, but because he made a career of committing property offenses and showed himself to not be amenable to rehabilitation. In upholding the constitutionality of life sentences for repeat offenders, the United States Supreme Court noted "it is in the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Rummel v. Estelle*, 445 U.S. 263, 276, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). More recently, the United States Supreme Court upheld the life sentence given to Gary Ewing, whose "third strike" came after he stole three golf clubs. *Ewing v. California*, 538 U.S. 11, 17–18, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).[19] Mr. Ewing was a career criminal with a record of property and drug offenses that is strikingly similar to Appellant's. *Id.* When discussing the application of the "three strikes" law to a nonviolent, property offender, Justice O'Connor noted:

California's justification is no pretext. Recidivism is a serious public concern in California and throughout the Nation. According to a recent report, approximately 67 percent of former inmates released from state prisons were charges with at least one "serious" new crime within three years of their release. See U.S. Dept. of Justice, Bureau of Justice Statistics, P. Langan & D. Levin, Special Report: Recidivism of Prisoners Released in 1994, P. 1 (June 2002). In particular, released property offenders like Ewing had higher recidivism rates than those released after committing violent, drug, or public-order offenses. *Id.*, at 8. Approximately 73 percent of the property offenders released in 1994 were arrested again within three years compared to approximately 61 percent of the violent offenders, 62 percent of the public-order offenders, and 66 percent of the drug offenders. *Ibid.*

*Ewing*, 538 U.S. at 26, 123 S.Ct. 1179.

¶ 11 Thus, the Majority's sweeping conclusion that "a total sentence that amounts to a life sentence is 'clearly unreasonable,' "[20] ignores the record that: 1) Appellant is a career criminal; 2) there is a valid conviction for each crime; 3) there are victims to the crimes; 4) the sentencing court gave a reason for each and every separate sentence; and 5) each of the sentences is within the standard range. In effect, the Majority opinion will require sentencing judges to offer discounts on sentencing for nonviolent crimes, a policy decision better left to the duly elected members of the legislature.

standard range on each offense and the length of his sentence was due to the fact that the sentences were ordered to be served consecutively. *See Commonwealth v. Boyer*, 856 A.2d 149, 153 (Pa.Super.2004).

**19.** The Majority claims that *Ewing* is inapposite because Pennsylvania does not have a three strikes law. (Maj. p. 779, n. 11). I disagree. *Ewing*'s discussion of the harm caused by offenders such as Appellant is certainly pertinent, as is its holding that a life sentence for a property offender is not constitutionally excessive.

**20.** Indeed, the sentencing judge in the within case said:
Relative to Count II, the sentence imposed was not excessive considering the number of offenses for which the Defendant was sentenced. In fact, the sentence was within the standard range of the sentencing guidelines."
March 5, 2002 Order, p. 2 as quoted in the Majority Opinion p. 779.

¶ 12 In concluding as a matter of law that standard range sentences in a consecutive fashion are "clearly unreasonable", the Majority severely hampers our sentencing judges in Pennsylvania. Moreover, the Majority offers no guidance to the sentencing judge as to how many years, in the instant case, the judge can sentence consecutively for each crime without the sentence being "clearly unreasonable".

¶ 13 Further, this attack on the ability of the trial judge to order that a sentence be served consecutively reflects a significant departure from Pennsylvania law. In a recent decision, *Commonwealth v. Boyer*, 856 A.2d 149, 153 (Pa.Super.2004), the Honorable Michael T. Joyce, relying on long-standing Pennsylvania law, wrote, "[t]he imposition of consecutive as opposed to concurrent sentences is solely within the discretion of the trial court, and does not in and of itself even rise to the level of a substantial question." *Boyer*, 856 A.2d at 153. The Majority provides no legal justification for this departure and provides no guidance for trial judges who wish to impose consecutive sentences.

¶ 14 The "clearly unreasonable" test can become but a reflection of the subjective predilection of an appellate court judge for leniency based merely on the type of crime. Again, such a policy matter on the type of crime is for the legislature to decide, not the courts. And such a decision on length of incarceration is for the sentencing judge, not the appellate courts.

¶ 15 The Majority also faults the sentencing court for failing to take into account Appellant's rehabilitive needs and for failing to discuss whether the sentence was appropriate as a function of the particular circumstances of the offenses involved. (Maj. p. 781). In sentencing Appellant, the sentencing court made a specific factual finding that Appellant was not amenable to rehabilitation. N.T. 2/19/02 at 28–34. The sentencing judge supported this position by noting Appellant's over twenty-year criminal career, his failure to ever hold significant employment, and the failure of repeated prior attempts at rehabilitation. *Id.*

¶ 16 It is well within the discretion of a sentencing court, who is in a far better position to make such a determination, to conclude, based upon the record, that a particular individual is not amenable to rehabilitation and to decline to waste limited resources on an individual who has no interest leading a law-abiding life-style. Further, the sentencing court certainly discussed why the sentence was appropriate as a function of the particular circumstances of the offenses involved. The sentencing court particularly noted the number of offenses, the geographic range, Appellant's attempt to escape, and the fact that he involved members of his family in his criminal activities. N.T. N.T. 2/19/02 at 28–34.

¶ 17 In the instant matter, each and every requirement of *Commonwealth v. Drumgoole*, 341 Pa.Super. 468, 491 A.2d 1352, 1354 (1985), cited in the Majority Opinion at p. 778, was met. In fact, the Majority ignores the impact of its own references to "the defendant's background...the sentencing court's opportunity to observe the defendant...the presentence investigation report..." *Id.*, all of which were carefully met and considered by the sentencing court.

¶ 18 In summary, the Majority may well have a "gut feeling" the sentence is excessive in this particular case. However, the trial judge has followed the law and exercised appropriate discretion. Our appellate court should not make a sweeping policy decision that consecutive sentences

in a non-violent set of crimes are *per se* "clearly unreasonable." I would affirm.