J-A15008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HIRAM RAMOS | : | |
| | : | |
| Appellant | : | No. 1977 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 11, 2019
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s): CP-46-CR-0007236-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HIRAM RAMOS | : | |
| | : | |
| Appellant | : | No. 1978 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 11, 2019
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s): CP-46-CR-0006862-2017

BEFORE:   LAZARUS, J., KING, J. and STRASSBURGER, J.*

DISSENTING MEMORANDUM BY STRASSBURGER, J.:   **FILED OCTOBER 05, 2020**

I respectfully dissent. While I agree with the learned Majority that Hiram Ramos (Appellant) has presented a substantial question warranting our

---

* Retired Senior Judge assigned to the Superior Court.

discretionary review of his sentence,[1] I respectfully disagree that the trial court did not abuse its discretion, as I would hold the consecutive nature of Appellant's aggregate sentence of 58 years and 5 months to 116 years and 10 months of incarceration is clearly unreasonable.

As the Majority explains, Appellant received a lengthy aggregate sentence because the trial court chose to impose consecutive, standard range sentences. Appellant's convictions involved 31 properties, 13 of which were burglarized. Of the remainder, 11 involved only loitering and prowling at night time, a third degree misdemeanor, and the rest were attempted property offenses. For multiple offenses committed at a single property, the sentences merged or the trial court ordered them to run concurrently. **See** N.T., 6/11/2019, at 37-51. But for each of the 31 properties, the trial court ordered the sentences to run consecutively. **Id.** The imposition of these consecutive sentences resulted in what is essentially a guaranteed life sentence for Appellant, as he will remain in prison under the **minimum** term until age 92.

---

[1] With regard to satisfying the fourth factor for this Court to consider a challenge to the discretionary aspects of Appellant's sentence, **see** Majority at 5-7, I note that this Court has recognized "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Lamonda**, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*). In my view, this case presents an "extreme circumstance," due to the exceptional length of Appellant's aggregate maximum sentence of nearly 117 years for property crimes in which there were no encounters with any victims, no one was physically injured, and the victims who had items stolen were not aware they were missing until the following day.

As the Majority sets forth, the trial court has discretion to impose sentences consecutively or concurrently. ***See*** Majority, at 11. "This Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d)." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1274 (Pa. Super. 2013) ("***Dodge IV***"). Subsection 9781(c)(2) provides that this Court "shall vacate the sentence and remand the case to the sentencing court with instructions" if we find that "the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). In reviewing the record, we consider the four factors set forth in subsection 9781(d). ***See*** Majority at 12-13. Further, "[w]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant." ***Commonwealth v. Coulverson***, 34 A.3d 135, 144 (Pa. Super. 2011). I am cognizant, as are my learned colleagues, of our Supreme Court's pronouncement that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently." Majority at 12, *quoting* ***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007). Nonetheless, I believe this is one of those "infrequent" instances.

- 3 -

In one such "infrequent" case, we reviewed the trial court's imposition of an aggregate sentence of 18 to 90 years of incarceration after the defendant pleaded guilty to rape, involuntary deviate sexual intercourse, robbery, and numerous other charges. **Coulverson**, 34 A.3d at 138-39. Even though Coulverson's minimum sentences were within the standard range of the sentencing guidelines, this Court held that his aggregate sentence was "clearly unreasonable" under subsection 9781(c)(2). We reasoned as follows.

> **[T]he record reveals scant consideration of anything other than victim impact and the court's impulse for retribution on the victims' behalf.** In so recognizing, we hasten to acknowledge that the victims in this case, particularly those stricken by the rape and its aftermath, are casualties of a social and personal tragedy that has profoundly altered the courses of their lives. Their losses are the product of brutal, senseless acts and anathema to individual dignity in an ordered society. **Nevertheless, those losses do not obviate the legal and social imperative that a defendant's punishment must fit not only the crime he committed, as reflected here in the impact statements of the victims at sentencing, but also must account for the rehabilitative need of the defendant, and the companion interest of society reflected in sections 9721(b) and 9781(d).**
>
> These needs are not served merely because the sentencing judge elects to commence a sentence in the standard range of the Sentencing Guidelines. Other factors too, including the term of the maximum sentence (regardless of the availability of statutory maximums or consecutive sentencing), also bear on the extent to which sentencing norms are observed and an appropriate sentence imposed. A sentence may still be excessive regardless of the commencement of terms of imprisonment in the standard guidelines range if the upper end of the sentence imposes a term unlikely to end during the defendant's natural life span or, as here, perpetually subject to the discretion of the Board of Probation and Parole.

*Coulverson*, 34 A.3d at 148 (emphasis added). We continued as follows.

> [T]he deliberation of a court of law demands evaluation of multiple considerations that private grief does not. Thus, **while a crime's impact on the victim continues to be a significant element of a sentencing judge's consideration, the court may not ignore the continuum of circumstances underlying a defendant's criminal conduct, society's need for rehabilitation,** or the statutory factors enunciated in our Sentencing Code on the way to imposing a maximum sentence. Nor may it aggregate consecutive sentences merely to achieve extended incarceration if the totality of the sentencing factors involved … has not been considered and acknowledged. In this regard, the trial court's consideration here was plainly inadequate, its explanation scant, and the resulting maximum sentence manifestly excessive. … Although the court acknowledged the PSI report, it did so only as a perfunctory exercise and focused its consideration entirely on the severity of [the defendant's] offenses and the victims' impact statements. Its discussion evinced no consideration whatsoever of the dysfunction that marked [the defendant's] own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that, with appropriate mental health treatment, he might succeed at rehabilitation after serving a substantial term of eighteen years' incarceration. The resulting sentence cannot be described as "individualized" in any meaningful way. Consequently, notwithstanding the commencement of [the defendant's] multiple sentences in the standard guidelines range, we find the maximum sentence imposed "clearly unreasonable."

*Id.* at 149-50 (emphasis added).

In the *Dodge* series of cases, this Court reviewed, in four decisions spanning nine years, the consecutive nature of the trial court's imposition of sentences upon a defendant. There, the trial court originally sentenced 42-year-old Dodge to a total sentence of 58½ to 124 years for his convictions of 40 counts of receiving stolen property, two counts of burglary, two counts of

criminal trespass, two drug offenses, and unauthorized use of a motor vehicle. *Commonwealth v. Dodge*, 859 A.2d 771 (Pa. Super. 2004) ("*Dodge I*"). We vacated the sentence as clearly unreasonable. *Id.* Our Supreme Court vacated *Dodge I* and remanded to us for consideration in light of *Walls*, *supra*. This Court again vacated the sentence as clearly unreasonable under subsection 9781(c)(2) because its consecutive nature amounted to a life sentence, as Dodge would have been age 100½ under his minimum term. *Dodge II*, 957 A.2d 1198, 1202 (Pa. Super. 2008). On remand, the trial court resentenced Dodge to a similar sentence, which would have kept him in prison past the age of 93. We likewise vacated that sentence as clearly unreasonable. *Commonwealth v. Dodge*, 26 A.3d 1204 (Pa. Super. 2011) (unpublished memorandum) ("*Dodge III*"). At his third sentencing, the trial court sentenced him to consecutive sentences totaling 40 years and 7 months to 81 years and 2 months of incarceration. We affirmed, reasoning that the sentence, while lengthy, did not amount to a life sentence since Dodge's minimum release date would be "in his early eighties." *Dodge IV*, 77 A.3d at 1276.

Further, I am persuaded by a recent decision of this Court, *Commonwealth v. Hamman*, 1730 MDA 2019, 2020 WL 5015846 (Pa.

Super. Aug. 25, 2020) (non-precedential decision).[2] In that case, Hamman was sentenced for three burglaries, conspiracy, two firearms violations, and criminal mischief. For two of the burglary convictions and the conspiracy conviction, the court imposed a total maximum sentence of 40 years and ran it consecutively to his other sentences, for an aggregate term of 21 to 75 years of incarceration. Hamman stole items such as a table, chairs, dehumidifiers, and a log splitter, in addition to firearms. We held that the 40-year total maximum sentence imposed for two burglaries and a conspiracy conviction, run consecutively to the additional 35 years of maximum sentences, was clearly unreasonable. We explained as follows.

> Hamman, who was almost 38 years old on the date of sentencing, contends that the trial court abused its discretion by imposing a total maximum of 40 years' imprisonment for burglary and conspiracy in [one of the cases] and burglary in [another] case. The court ran this total consecutively to Hamman's other sentences to produce an aggregate maximum of 75 years' imprisonment, approximately 35 years longer than Hamman's life expectancy.[6] We agree with Hamman that the court imposed an excessive sentence.
>
> _____
> [6] Pa.R.E. 201(b)(2) provides a court "may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned". Pennsylvania's Standard Civil Jury Instructions refer to life expectancy tables prepared by the National Center for Health Statistics, U.S. Department of Health and Human

_____
[2] Unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b).

Services ("DHS"). The 2017 DHS table states that a 35 year old white man has a life expectancy of another 43.4 years, and that a 40 year old white man has a life expectancy of another 38.8 years. In accordance with Rule 201, we take judicial notice of this data.

*Hamman*, 2020 WL 5015846, at *4. After examining *Coulverson* and the *Dodge* series of cases, this Court explained as follows.

In our view, the 40 year maximum imposed for the [] offenses [relating to two of the burglaries], in conjunction with Hamman's 35 additional years of maximum sentences, is clearly unreasonable for reasons analogous to *Coulverson*. As in *Coulverson*, the trial court stated cursorily that it reviewed the PSI but then imposed an exceptionally long sentence by paying scant attention to anything other than the impact of Hamman's burglaries on the victims. We understand that burglary and conspiracy are felonies, and that it is important for homeowners to feel safe in their homes. Nevertheless, as in *Coulverson*, the court went astray by focusing on vindicating the victims' sense of safety without considering the gravity of Hamman's offenses, the totality of Hamman's background and criminal history, Hamman's rehabilitative needs, and whether appropriate mental health treatment or other programs in prison will assist his rehabilitation. Next, as in *Coulverson*, Hamman's minimum sentences fell within standard guideline ranges, but his sentences still may be excessive, because "the[ir] upper end[s] … impose[ ] a term unlikely to end during [his] natural life span or, as here, perpetually subject to the discretion of the Board of Probation and Parole." [34 A.3d] at 148.

*Hamman*, 2020 WL 5015846, at *7. This Court thus held Hamman's sentences for two of the burglaries and the conspiracy conviction were clearly unreasonable. *Id.* at *8.

Instantly, Appellant was 34 years old at the time of sentencing and under the trial court's minimum sentence, will remain in prison until at least age 92. I acknowledge that the trial court took account of the sentencing

guidelines, had an opportunity to observe Appellant, and implicitly took Appellant's rehabilitative needs into account with its review of the presentence investigation (PSI) report. ***See*** Majority at 8-10. However, the trial court referred perfunctorily to the PSI report, and made no mention of its inclusion of information on Appellant's rehabilitative needs. The court focused on Appellant's lack of remorse in the PSI report, yet failed to acknowledge his allocution, during which he apologized repeatedly. N.T., 6/11/2019, at 34, 36. Nor did the trial court's discussion evince consideration of the testimony at sentencing describing Appellant's tumultuous upbringing without a mother or father as a contributing factor to his crimes. ***See*** N.T., 6/11/2019, at 11-13; ***see also Coulverson***, 34 A.3d at 150.

The trial court concentrated almost exclusively on the impact of the crimes on the victims and community, stressing that a "person's home is their castle" and that their sense of security had been taken from them. ***Id.*** at 9-10, *quoting* N.T., 6/11/2019, at 35-36. The court did not engage in a meaningful analysis of the gravity of the offenses. It specifically indicated that it was imposing consecutive sentences to account for the impact on each of the 31 victims. Yet, the court made no distinction between the victims who were at home asleep when Appellant broke into their residences, and the victims of Appellant's loitering outside their homes. The court also failed to acknowledge that none of crimes involved any encounters with any victims.

- 9 -

As in **Coulverson** and **Hamman**, the trial court here "imposed an exceptionally long sentence by paying scant attention to anything other than the impact" of Appellant's crimes on the victims. **See Hamman**, 2020 WL 5015846, at *7. Likewise, as in **Coulverson** and **Hamman**, I recognize that Appellant committed multiple felonies and understand "that it is important for homeowners to feel safe in their homes," but believe "the court went astray by focusing on vindicating the victims' sense of safety without considering the gravity of [Appellant's] offenses, the totality of [his] background and criminal history, [his] rehabilitative needs, and whether appropriate mental health treatment or other programs in prison will assist his rehabilitation." **See Hamman**, 2020 WL 5015846, at *7.

Further, as in **Dodge II**, Appellant's life sentence for property crimes is clearly unreasonable given the particular circumstances of the offenses involved. The trial court concluded that Appellant's multiple offenses warranted a lengthy period of incarceration, but "did not acknowledge that its sentence essentially guarantees life imprisonment for Appellant." **Dodge II**, 957 A.2d at 1202. It cannot be reasonably questioned that age 92 is beyond Appellant's life expectancy. **See Hamman**, 2020 WL 5015846, at *4 n.6. The upper end of Appellant's term is more than 70 years longer than his life expectancy. **See id.** While his offenses undoubtedly are serious and upset his victims and the community, the gravity of his offenses does not warrant a life sentence where there were no encounters with any victims, no one was

physically injured, and the victims who had items stolen were not even aware their items were missing until the following day. **See Dodge II**, 957 A.3d at 1278 (holding Dodge "could not be sentenced to the equivalent of life imprisonment for property crimes").

Accordingly, I would conclude that the trial court's exercise of discretion in imposing a life sentence was clearly unreasonable within the meaning of § 9781(c)(2). To be clear, I would hold the consecutive nature of the sentences, and not the individual sentence imposed upon each offense, constituted an abuse of discretion. Thus, I would vacate the judgments of sentence and remand for resentencing.

For these reasons, I respectfully dissent.