132 So.2d 599 (1961)
Dennis Manford WHITNEY, Appellant,
v.
STATE of Florida, Appellee.
No. 40091.
Supreme Court of Florida.
September 6, 1961.
*600 Mitchell M. Goldman and Edward P. Swan, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
Appellant Whitney, seeks reversal of a judgment of conviction and sentence to death based upon a jury verdict finding him guilty of murder in the first degree, without a mercy recommendation.
Numerous alleged procedural errors are assigned to support reversal.
The principal facts establishing the unlawful homicide are revealed by a stipulation entered into between the State and signed by the accused with approving endorsements of his two court-appointed attorneys and his two married sisters.
*601 On February 29, 1960, Dennis Whitney, then seventeen years of age, while in the act of robbing a filling station killed one Keeler. Whitney entered the station armed with a .22 caliber pistol. He first shot Keeler, the attendant, through the face. The man fell but the wound was not fatal. He then methodically fired a second slug into the back of the head of the fallen man. Whitney then robbed the cash register of some $120. When apprehended on March 5, 1960, Whitney freely confessed. All of the foregoing is revealed by the stipulation mentioned at the outset. The record shows that the father of the boy was notified of his predicament and the date of trial, as required by Section 932.38, Florida Statutes, F.S.A. So far as this record reveals the father, who apparently resides in California, has demonstrated no interest in his son's difficulties. The boy's mother is dead. The two sisters, however, did appear and, as stated above, approved the stipulation. The principal defense was based upon insanity. After hearing the testimony of two court-appointed psychiatrists the trial judge ruled the appellant to be sane and legally capable of standing trial. The evidence which was submitted to a jury, consisted of the stipulation, the testimony of a police officer who identified pictures of the scene of the crime, a playback of the recorded confession and the brief testimony of the defendant himself. He described his early family life which he assigned as the spring-board of his criminal career. The jury found him guilty, with no recommendation of mercy. The trial judge prescribed the supreme penalty. We are now requested to reverse the judgment of conviction.
There is no doubt whatever about homicide, and the criminal agency which produced it. This appeal presents to us primarily, questions regarding the correctness of the conclusion of the trial judge in evaluating the testimony of the psychiatrists and various alleged procedural errors which it is contended resulted in a denial of due process. We will dispose of each of them.
Appellant contends that the trial judge should have sustained his motion to quash the indictment because he was not accorded an opportunity to challenge the grand jury, a privilege which he asserts was his under Section 905.05, Florida Statutes, F.S.A. That section simply provides that after the grand jurors have been impanelled and sworn no objections to the grand jury shall be raised by plea or otherwise. The swearing of the grand jury, according to the statute, shall be conclusive evidence of competency as to defendants who knew, or had reasonable ground to believe, that a case in which they were involved would be investigated by the grand jury at the time it was impanelled and sworn.
Actually, the motion to quash does not allege any deprivation of a right to challenge the grand jury prior to or at the time it was "impanelled." The motion asserts that "at the time said indictment was rendered and prior thereto at the time when the grand jury was considering the evidence in this case" the defendant Whitney was in jail and was not permitted to challenge the panel. Aside from this technical deficiency the motion to quash was properly denied for the simple reason that the defendant failed to show that he had requested the right to be present when the grand jurors were impanelled and that his request had been denied. 24 Am.Jur., Grand Jury, page 855, Section 31; State v. Warner, 165 Mo. 399, 65 S.W. 584; People v. Romero, 18 Cal. 89, 90; State v. Bobbst, 269 Mo. 214, 190 S.W. 257.
Furthermore, the motion failed to allege that there were any grounds whatsoever to challenge the grand jury or any member thereof. This Court has held that if there are grounds for challenge, and the accused has not been accorded the opportunity to do so, then he may do so by proper pleading after the indictment is filed, notwithstanding Section 905.05, supra. State v. Lewis, 152 Fla. 178, 11 So.2d 337.
*602 Appellant next contends that the trial judge was not supported in his conclusion regarding the sanity of the accused because of alleged conflicts between the testimony of the two court-appointed psychiatrists. It is true that one of the doctors stated that his examination of Whitney suggested certain features of a psychotic or a schizophrenic. However, they were both of the conviction that the accused well understood the nature of his act, that he had no difficulty whatever distinguishing between right and wrong and that he was fully able to cooperate with his attorney in the conduct of the trial. We deem it unnecessary to become involved in any of the present-day discussions regarding the appropriate standards by which to measure the mental capabilities of an accused to form a criminal intent. As we read this record and by all of the standards which have come to our attention, the only conclusion which appears to be justified is that this appellant methodically and with full knowledge of the wrongful nature of his act murdered his victim. It may be that he had split with society and that his antagonisms were the product of a miserable family environment from the time of his birth  the ninth of ten children. However, there is no basis to conclude that this young appellant had lost contact with reality or killed because he was insane.
A point is made that the trial judge committed error in accepting a written report of a third psychiatrist who was not present to testify at the sanity hearing. It is clear from his order that the judge based his conclusion on the testimony of the two who appeared before him and we must assume that he disregarded any statements not properly available for consideration. Similarly, we are not impressed by the contention that one of the court-appointed psychiatrists was disqualified because of having previous contact with the appellant in an earlier homicide case.
It is claimed that the state attorney committed harmful error with allegedly prejudicial and inflammatory remarks before the jury. In one instance the appellant was referred to as a "professional killer." At another time it was stated that he "lived by the gun." Our examination of this record causes us to conclude that the observations of the prosecutor were simply reasonable inferences which he could properly deduce from the evidence. The appellant's counsel had undertaken to portray him as an irresponsible youth, a mere boy whose conduct was wrong but whose family background was really the cause of his crime. To rebut this portrayal, the prosecutor certainly was justified in suggesting from the methodical manner in which the boy described the killing that he both robbed and killed with a professional technique and motive.
It is further contended that because of a colloquy between one of the jurors and the court, when the jury was polled after verdict, the verdict was not unanimous. It is true that when the clerk asked the juror, O'Shaughnessy, if the verdict was his, the man responded "that is not my verdict." There then followed in open court an exchange between the judge and the juror which clearly revealed that the juror had voted in favor of the guilt of the accused, but obviously had recommended mercy. When it was explained to him that all twelve jurors must concur in the matter of guilt but that a majority could recommend mercy, the juror stated that he then understood the situation. The court then asked him again if the verdict which had been read was his verdict, he replied "that is my verdict." Out of an abundance of caution, the trial judge had the jury polled a second time and again the particular juror responded "that is my verdict." Inasmuch as it is clear from the record that the juror in question agreed to the verdict that was submitted and filed, we find no error in this aspect of the proceeding. Henry v. State, 39 Fla. 233, 22 So.2d 652; Stanton v. State, 148 Fla. 732, 5 So.2d 4.
*603 There is a final contention to the effect that the appellant had previously been sentenced to life imprisonment for another homicide and that this earlier sentence precludes the execution of the death penalty for the instant crime. No authorities are cited to support the contention. We are referred to Section 921.16, Florida Statutes, F.S.A., which has to do with the arrangement of the sentences upon conviction of two or more offenses charged "in the same indictment." This statute has no bearing on the instant situation. It appears that Whitney had been sentenced to life for a murder in Palm Beach County. A certified copy of the judgment was filed here. Appellant claims that he is entitled to serve out his life sentence for the Palm Beach murder before execution of the penalty in the instant case. There is no merit in this contention. If there were, any life termer could escape prison and proceed to murder as he pleased without fear of the supreme penalty. Blitch v. Buchanan, 100 Fla. 1242, 132 So. 474.
We have examined in detail each of the errors assigned for reversal and find them all to be without merit. In addition, we have fulfilled the requirements of Section 924.32(2), Florida Statutes, F.S.A., by examining all of the evidence. This comprehensive study of the record leads us to conclude that the trial was without error and the ends of justice make no demand for a new trial.
The trial was without error. The judgment is affirmed.
It is so ordered.
THOMAS, Acting Chief Justice, TERRELL and O'CONNELL, JJ., and CARROLL, District Court Judge, concur.
HOBSON, J., and EATON, Circuit Judge, agree to conclusion and judgment only.