661 A.2d 1367

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Harrison GRAHAM, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 26, 1995.

Decided July 18, 1995.

174

176

Joel S. Moldovsky, Philadelphia, for Harrison Graham.

Catherine Marshall, Ronald Eisenberg, Hugh J. Burns, Jr., Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gens. Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

Harrison Graham was tried non-jury and found guilty on seven counts of first degree murder, 18 Pa.C.S. § 2502, and seven counts of abuse of corpse, 18 Pa.C.S. § 5510. Pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h), this is an automatic direct appeal of judgments of sentence of death, which were imposed for six of the murder convictions.

■ The initial issue to be resolved is whether the Court need address any substantive matters in light of the fact that Graham has expressed his desire that no appeal be litigated. Indeed, he has filed a Petition to Dismiss the appeal.

Graham concedes that this Court has held that we are required by statute to review all cases in which the death penalty has been imposed. See 42 Pa.C.S. § 9711(h); *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991); and *Commonwealth v. Appel*, 517 Pa. 529, 539 A.2d 780 (1989). He argues, however, that this does not affect a capital defendant's ability to waive his right to appeal. He suggests that since the Commonwealth did not object to or seek to modify the sentence after it was imposed in 1988, and he expressly disclaims any interest in having the Court conduct further review, the appeal should be dismissed.

The Commonwealth responds that the automatic appeal required in capital cases is independent of the appellate rights personal to an individual defendant. We agree. As we stated in *Appel*, "automatic review ... is an integral and absolutely essential procedural safeguard prescribed by the legislature in the enactment of Pennsylvania's death penalty statute.... Thus although no issues have been presented for our consideration in this matter, we must fulfill our statutory obligation by examining the record lodged in this Court *to ensure that the sentences imposed comport with the requirements of our death penalty statute* and may be legitimately executed." 517 Pa. at 532, 539 A.2d at 781. (Emphasis added.) [1]

For this reason, the rules of appellate procedure are drafted so that in capital cases the appellate process is to be commenced even without the filing of a notice of appeal. Pa.

---

[1]. To be sure, this case differs from *Appel* and *Heidnik* in that those defendants apparently accepted the sentences of death imposed upon them and saw appellate review as an impediment to having them carried out, whereas Graham is satisfied that the sentence imposed on him will enable him to live out the remainder of his natural life and sees appellate review as carrying the risk that the death sentences will be given effect prior thereto. Despite these different perspectives, the purpose of the automatic appeal is the same in both circumstances— assuring the integrity of the capital sentencing process.

R.A.P. 1941 provides that "[u]pon the entry of a sentence subject to 42 Pa.C.S. § 9711(h) (review of sentence of death) *the court shall direct* the official court reporter and *the clerk to proceed under this chapter as if a notice of appeal had been filed* 20 days after the date of entry of the sentence of death...." (Emphasis added.)

▮ It would appear that in the present case the court failed to issue the direction to the reporter and clerk mandated by this Rule. No action was taken following entry of the judgments of sentence until March of 1993. At that time, apparently, a memo was issued listing the case for disposition of post-trial motions on April 22, 1993. Counsel for Graham responded with a letter to the trial judge dated March 19, 1993, indicating that he would be unavailable until May 10, and further stating his belief that no proceedings were necessary because Graham, after consultation with his mother and various attorneys, had decided "that no motions be filed attacking the convictions or the sentences and that no appeal be taken." On March 24, 1993, the Deputy Director of Criminal Listings issued a Memorandum "to supersede our memo dated 3/11/93" and stating, "Please cancel the present listing of 4/22/93 in Courtroom 453 before the Honorable Robert A. Latrone, for disposition of Post Trial Motions. All matters concerning this defendant, Harrison Graham, in Common Pleas Court have been disposed."

On April 6, 1993, a Notice of Appeal form was filed, giving notice of appeal to this Court. The areas designated for signatures of the appellant or counsel did not bear signatures, but contained the handwritten notation "(Automatic Appeal)." The court filed its opinion on May 20, 1994, and the record was transmitted to this Court on May 26, 1994. Accordingly, despite the court's failure to perform its duty in accordance with Rule 1941(a), the appropriate actions were ultimately undertaken and this case is properly before the Court.

▮ Because Graham has advanced no issues we review only the sufficiency of the evidence to establish first degree murder, and the validity of the sentences of death, as to the

six counts for which the death penalty was imposed. See *Appel* and *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982).

At trial, the Commonwealth introduced the testimony of police officers who, responding to a call by the landlord who had just evicted Graham, had discovered in Graham's apartment the remains of seven females in various stages of decay. Also introduced as evidence was a statement Graham gave to police in which he admitted that each of the women had died in the same way. Graham stated that a woman would come to the apartment with him to shoot drugs and drink liquor. Later, while they were engaged in sexual intercourse, Graham would grab the woman by the neck and ultimately choke her to death. Graham characterized the strangulations as "accidental," saying that in each instance he did not realize what had occurred until he later woke up and found that the woman lying next to him was dead. He would then dispose of the body in the back room of the apartment. Several other persons who had been in the apartment and had seen Graham with some of the victims offered corroborating testimony.

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing. . . . " 18 Pa.C.S. § 2502. An intentional killing is a killing "by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing. . . ." *Id.*

The common pleas court recognized that the design to kill required for first degree murder can be formulated in a fraction of a second. *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976). As was its prerogative, the court, as finder of fact, chose not to believe Graham's explanation of the strangulations as accidental, describing this claim as "self-serving and wholly incredible." Having examined the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we are satisfied that as to each of the victims the evidence was sufficient to establish all the elements of first degree murder beyond a reasonable doubt.

 For each of the six first degree murder verdicts involved in this appeal,[2] the court found two aggravating circumstances[3] which outweighed two mitigating circumstances,[4] thus requiring a sentence of death, 42 Pa.C.S. § 9711(c)(1)(iv).

 We find no evidence to suggest that the sentences of death were "the product of passion, prejudice or any other arbitrary factor." Given the seven verdicts of first degree murder in this trial, the evidence unquestionably supports the aggravating circumstances that were found. Upon review of the statistics compiled by the Administrative Office of Pennsylvania Courts, the sentences are not "excessive or disproportionate to the penalty imposed in similar cases." Accordingly, the judgments of sentence of death must be affirmed. 42 Pa.C.S. § 9711(h)(3).

 The issue that remains is the validity of the trial court's order that the death sentences be consecutive to the

2. As previously indicated, Graham was found guilty of seven counts of first degree murder. On one count, No. 3948 August Term 1987, the court found no aggravating circumstances, and thus imposed a sentence of life imprisonment. As no notice of appeal was filed with respect to this count or the judgments of sentence of one to two years imprisonment on the convictions for abuse of corpse, we have no occasion to review those matters. See Pa.R.A.P.1941, Note ("Although Rule 702(b) (matters tried with capital offenses) vests jurisdiction in the Supreme Court over appeals from sentences imposed on a defendant for lesser offenses as a result of the same criminal episode or transaction where the offense is tried with the capital offense, the appeal from the lesser offenses is not automatic. Thus the right to appeal the judgment of sentence on a lesser offense will be lost unless all requisite steps are taken, including preservation of issues ... filing a timely notice of appeal, etc.")

3. "The defendant has been convicted of another federal or state offense committed either before or at the time of the offense at issue, for which a sentence of life imprisonment was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense," 42 Pa.C.S. § 9711(d)(10), and "The defendant has been convicted of another murder, committed either before or at the time of the offense at issue," 42 Pa.C.S. § 9711(d)(11).

4. "[T]he defendant has no significant history of prior criminal convictions," 42 Pa.C.S. § 9711(e)(1), and "any other evidence of mitigation concerning the character and record of this defendant and the circumstances of his offense," 42 Pa.C.S. § 9711(e)(8).

other sentences imposed. In its sentencing order, the court imposed consecutive sentences of one to two years imprisonment for each of the seven abuse of corpse convictions, ordered that the life imprisonment term be consecutive to these sentences, and directed that the six sentences of death be consecutive to the other sentences. The court explained in its Opinion that

> The initial life sentence was humane in nature, but it assured that this mass murderer would not be granted any further opportunities to satisfy his homicidal instincts. The six consecutive death penalties assured that the first sentence of life imprisonment was, in fact, an assured life imprisonment without opportunity for parole.

Opinion at 8.[5]

The Commonwealth argues that the court had no authority to make the death sentences consecutive to the life sentence, and that to the extent that it does so the order is illegal. The Commonwealth points out that the statute makes a death sentence mandatory where aggravating circumstances and no mitigating circumstances are found, and when, as here, aggravating circumstances outweigh mitigating circumstances. The Commonwealth argues that this mandatory feature intended by the legislature is obviated if the court, in formally imposing

---

**5.** This rationale carries no weight in explaining whether the court had the power to make the death sentences consecutive to the life term, and is of dubious merit in explaining the effect of doing so. Graham would be ineligible for parole from the life sentence whether the other counts carried sentences of death, life imprisonment, or no penalty at all. Act of August 6, 1941, P.L. 861, § 21, as amended, 61 P.S. § 331.21 (Supp.1995). Moreover, the existence of six consecutive death sentences would not per se have any bearing on the availability of pardon from the life sentence, which is within the exclusive power of the Governor subject to the recommendation of the Board of Pardons. Pa. Const. Art. IV, Sec. 9; 71 P.S. § 299. At most, the sentence structured by the court would stand as a recommendation to the Governor and the Board of Pardons that Graham should never be released from prison. See *Commonwealth v. Button*, 332 Pa.Super. 239, 253, 481 A.2d 342, 350 (1984) (Spaeth, J., concurring). Likewise, it would seem to be within the Governor's power to commute the life sentence, after which the death sentence could be carried out.

the sentence, can effectively nullify the decision made by the sentencing body.[6]

In support of this argument, the Commonwealth notes the significance of the mandatory feature of § 9711 to the capital sentencing scheme, describing it as necessary to forestall the problems of arbitrariness and potential jury nullification identified in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (plurality) and *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). *Furman* invalidated capital sentencing schemes that vested unfettered discretion in the sentencer, finding an unacceptable risk of arbitrary application. *Woodson* invalidated a scheme, adopted in response to *Furman*, that removed all discretion from the sentencer and required the death penalty upon conviction for capital murder. The Court concluded that in practice juries might arbitrarily nullify the death sentence by improperly refusing to convict some defendants of capital murder.

The Commonwealth notes that our Court has recognized the purpose of the mandatory feature of § 9711, citing *Commonwealth v. Peterkin*, 511 Pa. 299, 327–28, 513 A.2d 373, 387–88 (1986):

> Although it is true that the Pennsylvania death penalty statute does not allow a jury to avoid imposition of the death penalty through the exercise of unbridled discretion to grant mercy or leniency, the statute permits the defendant to introduce a broad range of mitigating evidence that can support the finding of one or more mitigating circumstances which may outweigh the aggravating circumstances found by the jury. Appeals for mercy and leniency can be founded upon and made through introduction of evidence along this broad spectrum of mitigating circumstances. The chan-

---

**6.** Section 9711(a) provides that the jury that decided the case is to determine at a separate sentencing hearing after the verdict is recorded whether the defendant shall be sentenced to death or life imprisonment. Subsection (b) provides for the impaneling of a jury for the sentencing hearing in cases where the defendant waived jury trial or pled guilty. It also provides that if the defendant waives a jury at the sentencing proceeding, "the trial judge shall hear the evidence and determine the penalty *in the same manner as would a jury.*" (Emphasis added.)

nelling of considerations of mercy and leniency into the scheme of aggravating and mitigating circumstances is consistent with the mandate of *Furman v. Georgia* ... that the discretion of the sentencing body in capital cases "be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."

(Citations omitted).

The Commonwealth also argues that a court's general authority to determine whether sentences are to be concurrent or consecutive is inapplicable in the context of the capital sentencing scheme, and that the death penalty is qualitatively different from confinement such that by its very nature it cannot aggregate with a term of imprisonment, especially a life sentence.

Graham does not directly address or attempt to refute the Commonwealth's arguments. Rather, he asserts his right to waive appellate review, argues that the Commonwealth failed to timely raise any challenges it may have to the sentence, and "requests that the status quo be maintained and that he be permitted to serve out the life sentence."

Perhaps not surprisingly, there is very little case law providing guidance with regard to this issue. Florida has addressed, and rejected, the argument that a death sentence should not be carried out until the defendant has fully served a previously imposed sentence of life imprisonment, *Whitney v. State*, 132 So.2d 599 (1961); *Blitch v. Buchanan*, 100 Fla. 1242, 132 So. 474 (1931). In those cases, however, the court had not directed that the death sentence be consecutive to the life term, it was the defendant arguing for that result.[7]

7. In *Elledge v. Graham*, 432 So.2d 35, 36 (1983), the Florida Supreme Court considered a situation similar to that presented here. Elledge "contend[ed] that since his 1977 death sentence contained a provision that the sentence run consecutive to a sentence of life imprisonment imposed in case No. 74–3811, in which [he] also pleaded guilty to first degree murder, the death sentence cannot be carried out until after the expiration of the life sentence, which carries a mandatory minimum of twenty five calendar years." The court dismissed this position as "wholly without merit," citing *Blitch* and *Whitney*, but did not specifically address the effect of the "consecutive" provision in the order

The general rule in Pennsylvania is that in imposing a sentence the court has discretion to determine whether to make it concurrent with or consecutive to other sentences then being imposed or other sentences previously imposed. 42 Pa.C.S. § 9721(a). That section provides:

In determining the sentence to be imposed, the court shall, except where a mandatory minimum sentence is otherwise provided by law, consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

Unless the court specifically indicates that they are to be consecutive, sentences are deemed to run concurrently. Pa. R.Crim.P. 1406.

In considering whether this discretion extends to determinations involving the death sentence, we note several significant factors about the Sentencing Code.

First, the death penalty provisions are contained in Subchapter B of the Sentencing Code, which bears the heading "Sentencing Authority." [8] Section 9721, quoted above, appears in Subchapter C, "Sentencing Alternatives," and by its terms is inapplicable to the death penalty. In other contexts, we have recognized that the death penalty statute may supersede the rules which apply to sentencing proceedings generally. See *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989) (allocution). Likewise, subchapter 350 of the Rules of Criminal Procedure provides special rules applicable "to the guilt and penalty determination phases of all cases in which the imposition of a sentence of death is authorized by law."

imposing the death sentence. Thus *Elledge* is of no assistance analytically.

**8.** All of the other provisions contained in this subchapter deal with mandatory minimum sentences.

Pa.R.Crim.P. 351. It is thus not self-evident that the general rule of court discretion with respect to making sentences concurrent or consecutive applies in the context of capital cases.

 Second, the only other statutory references to concurrent and consecutive sentences are found in Subchapter E of the Sentencing Code, "Imposition of Sentence", specifically sections 9757 and 9761. Beginning with section 9757, however, it would appear that Subchapter E, like Subchapter C, is wholly inapplicable to death penalty cases, different procedures having been provided in section 9711. Section 9757 bears the heading "Consecutive sentences *of total confinement* for multiple offenses" (emphasis added), and provides that when consecutive sentences are imposed "the court shall indicate the minimum sentence to be served for the total of all offenses." Read in context, this section can have no application to the death penalty, which is not a sentence of total confinement. Section 9761, which is titled "Computation and order of service of sentences," states that when a sentence is imposed concurrently with a sentence already being served and the previous sentence would expire first, the defendant shall be imprisoned at least until the last imposed minimum sentence has been served. Again, by its terms, this section is irrelevant in cases where the death penalty has been imposed. Compare *State v. Combs,* 62 Ohio St.3d 278, 581 N.E.2d 1071 (1991) (statute requiring that certain terms of imprisonment be served consecutively with and prior to life sentences or indefinite terms of imprisonment does not refer to death sentences and does not require that they be served before execution of a death sentence); *State v. Campbell,* 112 Wash.2d 186, 770 P.2d 620 (1989) (statute specifying that, where person is convicted of felony while serving sentence for a felony, second term of imprisonment shall not begin until all previous terms expire applies only to terms of imprisonment and does not preclude execution of death sentence until prior terms have been served).

Third, we agree with the Commonwealth that the death penalty statute is deliberately structured to channel the dis-

cretion of the sentencing body so as to avoid arbitrary application of the ultimate penalty. Since discretion with respect to the sentence is channelled in the process of weighing aggravating and mitigating circumstances, to allow the court to further exercise discretion when imposing the sentence decided upon would run counter to the statutory design. Indeed it would destroy the delicate balance between discretion and direction required by the decisions of the United States Supreme Court.[9]

For the foregoing reasons, we hold that when formally imposing a sentence of death determined in accordance with proceedings pursuant to 42 Pa.C.S. § 9711, the court has no discretion to order that such sentence be consecutive to any other sentences then being imposed or previously imposed. A judgment of sentence of death is *sui juris* and stands entirely apart from other punishments prescribed by the Sentencing Code.

The judgments of the court of common pleas are vacated in so far as they direct that the sentences are consecutive to the terms of years and the life term imposed on the other counts involved in this case. In all other respects they are affirmed.

The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by the Court, to the Governor. 42 Pa.C.S. § 9711(i).

MONTEMURO, J., is sitting by designation.

---

9. For example, if we were to recognize discretion in a trial court to order that a capital sentence not be carried out until a previous sentence for a term of years or for life had expired, a judge who was opposed to the death penalty could in almost every case coming before him or her effectively prevent the death sentence from ever being carried out. Other judges might use their discretion to delay execution in this manner in some cases but not others. This is precisely the kind of potential for arbitrary application based on unbridled discretion that rendered the sentencing scheme unconstitutional in *Furman*, and that Pennsylvania's death penalty statute was drafted to avoid.