## Commonwealth v. Brice

C.P. of Delaware County, no. 8354-08.

*A. Sheldon Kovach*, for Commonwealth.
*Jason R. Antoine*, for defendant.

I

HAZEL, *J.*, September 21, 2010—Defendant Genareo Brice was granted leave to file an appeal nunc pro tunc as a result of Post Conviction Relief Act (PCRA) proceedings in the above matter. In his Statement of Matters Complained of on appeal defendant challenges the

sufficiency of the evidence and the consecutive nature of the sentence imposed.

After a jury trial defendant was found guilty of robbery[1], theft by unlawful taking[2] and possessing an instrument of crime[3]. On July 13, 2009 the following sentence was imposed: 48 to 240 months' incarceration on Information 8354C-08, robbery, and a consecutive sentence of 12 months minus one day to 24 months minus a day on Information 83541-08, possessing an instrument of crime. No sentence was imposed on Information 8354E-08, theft by unlawful taking, due to merger principles. These sentences fell within the standard range recommended by the Pennsylvania Commission on Sentencing Guidelines.

### Sufficiency of the Evidence

In assessing the sufficiency of the evidence we view the evidence in the light most favorable to the verdict winner, the commonwealth, to determine whether there is sufficient evidence to enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. "[T]he facts and circumstances established by the commonwealth need not preclude every possibility of innocence" and "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa.Super. 2005). The commonwealth

1. 18 Pa.C.S.A. § 3701
2. 18 Pa.C.S.A. §3921
3. 18 Pa.C.S.A. §907

may sustain its burden of proving every element of the crime charged beyond a reasonable doubt by means of wholly circumstantial evidence. *Id.* The credibility of the witnesses and the assessment of the weight of the evidence are matters within the province of the jury as the trier of fact who is free to believe all, part or none of the evidence produced at trial. *Id.*

"A person is guilty of robbery if, in the course of a theft, he...threatens another with or intentionally puts him in fear of immediate serious bodily injury...." 18 Pa.C.S.A. §3701(a)(1)(ii). See also *Commonwealth v. Spencer*, 639 A.2d 820 (Pa. Super. 1994). "A person commits the crime of 'theft by unlawful taking' if he unlawfully takes the movable property of another with intent to deprive him thereof." *Commonwealth v. Alford*, 880 A.2d 666, 675-676 (Pa.Super. 2005) quoting *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000). "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). Section 907(d) includes: "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have" within the definition of an "instrument of crime." 18 Pa.C.S.A. § 907(d)(2). The defendant's criminal purpose "provides the touchstone of liability" for possessing an instrument of crime and this criminal intent may be inferred from the circumstances surrounding possession. *Commonwealth v. Andrews*, 564 Pa. 321, 337, 768 A.2d 309, 317 - 318 (Pa. 2001) citing Model Penal Code § 5.06 comment; *Commonwealth v. Hardick*, 475 Pa. 475, 479, 380 A.2d 1235, 1236-37 (Pa. 1977). The criminal purpose may be inferred from the circumstances

surrounding the possession. *See Commonwealth v. Moore*, 476 Pa. 19, 381 A.2d 845 (Pa. 1978).

The facts, viewed in the light most favorable to the commonwealth follow. On October 15, 2008 at about 7:30 a.m. Sonyette Williams, was on her way to work at the Garden Hill Learning Center, a day care center in Darby, Delaware County, Pennsylvania. N.T. 3/19/09 p. 6. She disembarked the trolley at Front & Main Streets in Darby and saw defendant standing at the trolley stop. Thinking this was odd, she crossed to the opposite side of Front Street. *Id.* at 7, 50-51. As she continued walking to the Learning Center defendant crossed the street and followed her. *Id.* at 7-11. Defendant asked Williams about five or six personal questions as he followed her at a distance of about eight feet. She responded at first, looking at defendant's face for about three seconds each time she responded. *Id.* at 11-14. Eventually defendant asked if he was "going to have to chase [Williams] and she said "yes" and began to walk faster. *Id.* at 14-16. Defendant "sped up" and when he reached Williams he put a black gun to her back and said "give me everything you have." *Id.* at 17-20. After a struggle defendant "snatched" Williams' book bag which contained, among other things, her wallet, Social Security card, photo driver's license, Family First medical card, SEPTA tokens, an algebra book, debit cards and her keys. *Id.* at 20-21,42, 55-56, 78. After he took the book bag he demanded, and took, her cell phone. He then ran slowly back down Front Street and disappeared in the space between two row houses. *Id.* 21-23. During the three minutes that transpired between Ms. Williams getting off the trolley and the robbery she looked at defendant's face about six to eight times, each time for three to four

seconds. As he took her book bag she looked directly at his face. *Id.* at 32. While defendant wore the hood on his tan hoodie "up" Ms. Williams was able to see his full face. *Id.* at 90.

Ms. Williams called her co-worker, Glenda Saunders, to tell her that she would not be able to open the day care because her keys were taken during the robbery. *Id.* at 78. In the course of that conversation she described her assailant to Ms. Saunders. *Id.* at 79. The next day, October 16, 2008, Ms. Williams went to work, arriving sometime around 8:00 a.m. *Id.* at 32-33. At about 10:00 a.m. Ms. Saunders, approached Ms. Williams and asked her to describe the man that robbed her the day before. *Id.* at 34-35. She told Ms. Williams that she thought she had just seen someone matching his description. *Id.* at 79. Ms. Saunders then immediately drove Ms. Williams to an address on Front Street where defendant sat, wearing the same clothes he was wearing during the robbery. *Id.* at 36-40. Ms. Williams immediately recognized him from the robbery and called the police. *Id.* at 40-42. Ms. Williams and Ms. Saunders went to the police station. From the police station a radio transmission dispatched officers to the unit block of Front Street where defendant was seen. Within a minute defendant, who was the only person in the area and matched Ms. Williams' description, was detained. *Id.* at 106 128-29. A patdown was conducted and a BB gun and a knife were recovered from defendant's waistband. *Id.* at 130-31. Officer Christine McAleer detained defendant and conducted the patdown. Regarding the BB gun she testified: "As I was trying to retrieve it from his waistband I actually had to hold it in my hands and feel the weight of it to confirm that it wasn't

a real gun because it is pretty...real looking." *Id.* at 132. Both the gun and the knife were introduced into evidence. See *Id.* at 131,172. Defendant was wearing a tan hoodie. *Id.* at 147. Officer David Cuddhy of the Darby Borough Police Department brought Ms. Williams to Front Street where she identified defendant as the man who robbed her with 100 percent certainty. *Id.* at 106.

After defendant's arrest a search warrant for his home, 14 North Front Street, was obtained and executed. *Id.* at 138,147. The warrant was executed on October 16, 2008 at about 12:30 p.m. *Id.* at 139. No one was present when the search began but during the course of the search defendant's mother, Diana Balls, appeared. *Id.* In the middle upstairs bedroom police found a cardboard box with Ms. Williams' driver's license, Social Security card, medical card, a photograph of Ms. Williams, and a VISA card bearing Ms. Williams' name lying on top of it. *Id.* at 141. A job application, a W-2 form and four other documents bearing the name Genareo Brice were discovered behind the box. *Id.* at 143-45. Ms. Balls testified that defendant shared this bedroom with his brother. *Id.* at 176-78.

Defendant offered the testimony of two witnesses. Defendant's mother Diana Balls testified that she found the items that were seized in her backyard on the morning of October 15th and that she assumed they belonged to a friend of one of her children. She placed them on the box in her boys' bedroom. *Id.* at 176-78. Ms. Balls admitted that she did not know Ms. Williams, did not recognize the person in either the photo or in the driver's license photo and that during the period following her son's arrest up until the day before trial she never told the police that she discovered Ms. Williams' property and placed it in her

son's room. *Id.* at 186-93. Danisha Wells, the mother of defendant's child, testified that from October 5, 2008 to the morning of October 16, 2008 defendant was with her and their newborn daughter on King Street in Chester, Pa. *Id.* at 197-98. Ms. Wells admitted that, other than family members, she told no one including law enforcement that defendant was with her when this robbery took place. *Id.* at 205.

Based on the foregoing evidence the commonwealth proved, beyond a reasonable doubt, that Sonyette Williams was intentionally put in fear of immediate serious bodily injury in the course of a theft. Indeed, defense counsel conceded this fact in closing argument. See *Id.* at 218. Rather, he argued that this was a case of mistaken identity. The jury however, chose to accept Ms. Williams' unwavering and certain identification as credible. Her testimony, corroborated by the fact that much of the property taken from her during the robbery was discovered in defendant's bedroom,is beyond reasonable doubt. Where a witness states positively and without equivocation that a defendant is the person who committed the crime that proof is sufficient to support the verdict. See *Commonwealth v. Patterson*, 940 A.2d 493 (Pa.Super. 2007). Conversely, where identification rests on the vague, tenuous, and uncertain testimony of an eyewitness a conviction will not stand. See e.g. *Commonwealth v. Pereria*, 280 A.2d 623 (Pa. Super. 1971); *Commonwealth v. Sharpe*, 10 A.2d 120 (Pa. Super. 1939). In *Commonwealth v. Patterson*, supra, the Superior Court affirmed the appellant's conviction where the victim "testified positively and without qualification that appellant perpetrated the offenses." Patterson was one of three men who entered the victim's home at about

1:00 a.m., waking the victim from his sleep. One of the men, who the victim knew, asked the victim for a ride. When he refused after abut five minutes Patterson held the victim at gunpoint for about two minutes while the others rummaged through the apartment. The room was lit only by light from an adjoining room and the men did not where masks. Days later the victim saw Patterson at a gas station with another man. He called the police and Patterson was arrested. The victim identified Patterson's photo from an array and made in-court identification, testifying that he had no doubt that Patterson was the man who held him at gunpoint.

In this case Ms. Williams identified defendant unequivocally. She testified that she saw his face several times for a few seconds each time as he followed her. It was daylight and she noticed him immediately when she came off the trolley because he was waiting at the stop but did not get on. She testified that most of the men in the area were African and he was unusual because he had no accent and appeared to be African American. She consistently described what he was wearing and looked directly at his face when he put the gun to her back. In addition to delivering a general charge regarding the credibility of witnesses the court instructed the jury that in evaluating Ms. Williams' identification testimony it should consider inter alia, whether she had a good opportunity to observe the perpetrator of this offense, the existing lighting conditions, the perpetrator's proximity and whether it enabled her to observe facial and other

physical conditions and his clothing, the circumstances surrounding her earlier identification, the level of certainty she displayed in making the identification, her consistency in describing the perpetrator, and whether she identified any other suspect in connection with this crime.[4] N.T. 3/19/09 p. 247. Ms. Williams' credibly testified that she looked at defendant intermittently in daylight for a period of about three minutes as he followed her and looked directly at his face when he put his gun in her back. She consistently described his physical characteristics and identified him with absolute certainty at the time of his arrest and in-court. Her identification was corroborated by the fact that her stolen property was in defendant's bedroom. All of this evidence enabled the jury to find, beyond a reasonable doubt, that defendant committed this robbery. See generally *Commonwealth v. Holmes*, 663 A.2d 771 (Pa.Super. 1995); *Commonwealth v. Fromal*, 572 A.2d 711 (Pa. Super.1990); *Commonwealth v. Boone*, 429 A.2d 689 (Pa. Super. 689 (Pa. Super. 1981) *Commonwealth v. Jellots*, 419 A.2d 1184 (Pa.Super. 1980).

Regarding the offense of possession of an instrument of crime, the circumstantial evidence proved defendant's intent to employ the BB gun criminally beyond a reasonable doubt. Ms. William's testified that she felt defendant put the gun to her back. She saw that it was black, looked like a weapon police would carry and felt "heavy." N.T.3/19/09 pp. 17-19. At the time of the arrest Officer McAleer was concerned that the gun was "real." She had to feel its weight before she concluded it was a

---

4. Defendant did not request, nor would he have been entitled to a *Kloiber* charge, given the facts of this case. See *Commonwealth v. Hudson*, 955 A.2d 1031 (Pa.Super. 2008).

BB gun. Finally, the evidence supports the conclusion that defendant used this gun to commit the robbery for which he has been convicted.

*Sentence*

Defendant claims the sentence imposed, forty-eight to 240 months' incarceration for the robbery, to be followed by twelve months minus one day to twenty-four months minus a day for possessing an instrument of crime is manifestly excessive due to its consecutive nature. The sentence imposed on each count fell within the standard range recommended by the Pennsylvania Commission on Sentencing Guidelines. The imposition of a consecutive sentence is solely within the discretion of the sentencing court. See e.g. *Commonwealth v. Graham*, 541 Pa. 173, 661 A.2d 1367 (Pa. 1995); *Commonwealth v. Johnson*, 873 A.2d 704 (Pa. Super. 2005). See also 42 Pa.C.S.A. § 9721. However, in some instances where sentences falling in the standard range are run consecutively a manifestly excessive aggregate sentence may result. See generally, *Commonwealth v. Mastromarino*, 2 A.2d 581, 2010 WL 2838008 (Pa.Super. 2010); *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595 (Pa.Super. 2010); *Commonwealth v. Dodge*, 957 A.2d 1198 (Pa.Super. 2008); *Commonwealth v. Dodge*, 859 A.2d 771 (Pa.Super. 2004) *vacated and remanded on other grounds*, 935 A.2d 1290 (Pa. 2007). An abuse of discretion is not shown merely by an error in judgment. An appellant "must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa.Super. 2003).). "When

imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. §9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant, and it must impose an individualized sentence. The sentence should be based on the minimum confinement consistent with the gravity of the offense, the need for public protection, and the defendant's needs for rehabilitation, and, of course, the court must consider the sentencing guidelines." *Commonwealth. v. Walls*, 846 A.2d 152, 157-158 (Pa.Super. 2004) (citations omitted). Where the sentencing court imposes a sentence within the guideline range, it will be found "clearly unreasonable" by an appellate court only where it is "irrational" or "not guided by sound judgment." *Commonwealth v. Dodge*, 957 A.2d 1198,1200 (Pa.Super. 2008).

In constructing the sentence imposed the court considered the fact that defendant is nineteen years of age. Defendant's familial, physical, educational, and employment histories and his mental health history, including a psychiatric evaluation conducted in anticipation of the sentencing hearing, were considered. In that evaluation a long period of inpatient treatment for psychiatric disorders was recommended. Defendant has an extensive record of juvenile felony and misdemeanor adjudications. A history of drug and alcohol abuse beginning at the age of thirteen was reported in a pre-sentence drug and alcohol evaluation. Defendant's stepfather, mother, and fiancé testified on his behalf at sentencing and the court considered their testimony. Additionally the court considered the seriousness of the offense, the comments of the defendant and defense counsel, a pre-sentence

investigation report and the Pennsylvania Sentencing Guidelines. N.T. 7/13/09. pp.31-37. At sentencing the court recommended defendant undergo a psychiatric and psychological evaluation while in state custody and that he receive mental health treatment while incarcerated if treatment is appropriate.

The sentence imposed is individualized and is consistent with the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, as the Sentencing Code requires. See 42 Pa.C.S.A. § 9721(b). In *Commonwealth v. Dodge*, 957 A.2d 1199 (Pa. Super. 2008), the appellant was convicted of thirty-seven counts of receiving stolen property, two counts of burglary, criminal trespass, possession of a small amount of marijuana, possession of drug paraphernalia, and unauthorized use of a motor vehicle. An aggregated sentence of 52 ½ to 111 years' incarceration, comprised of thirty-seven consecutive, standard range, seventeen to thirty-six month sentences was imposed. The appellant was forty-two years old and none of the offenses, including burglary, involved violence against a person. The Superior Court found the sentence "irrational, not guided by sound judgment, and therefore clearly unreasonable." By imposing consecutive standard range sentences for thirty-seven counts of receiving stolen property, a 52 ½ year minimum, the sentencing court essentially guaranteed life imprisonment for the forty-two year old appellant. Imposition of a life sentence for a series of non-violent thefts involving for the most part stolen costume jewelry was manifestly unreasonable and excessive. 957 A.2d 1202. In contrast, in the case sub judice defendant pursued the victim as she walked to her

place of employment on a public sidewalk and used an instrument of crime to threaten her, putting her in fear of serious harm. The victim testified that defendant put a heavy black gun into her back and demanded that she give him everything she had. He threatened her with serious bodily harm and violated her sense of personal safety on a public street at 7:30 in the morning. This was a brazen affront to the safety of Ms. Williams and to the larger community. Defendant was convicted of both robbery and possessing an instrument of crime. The offenses protect different interests and separate punishment for each crime is neither illegal nor unreasonable. "The commonwealth's interest in the right of citizens to be free from the threat that an implement of crime will be used to accomplish a crime is separate from the commonwealth's interest in protecting individuals from having their property rights jeopardized while being threatened with serious bodily injury." *Commonwealth v. Weigle* 949 A.2d 899,908 (Pa.Super. 2008). Under the circumstances of this case defendant is not entitled to a "volume discount" sentence where he was convicted of two separate offenses, including a crime of violence against a person. Defendant will be approximately twenty-four years old when he becomes eligible for parole in five years. As a result of his extensive history of juvenile adjudications he has been under the supervision of the court in the past but chose to offend once again. The court has recommended psychiatric and psychological evaluations so that he may receive appropriate treatment for mental health issues to further his rehabilitation during incarceration. The sentence of incarceration imposed is reasonable and is supported by the record. It provides defendant with an opportunity for rehabilitation and bears no resemblance to the "irrational" sentence imposed in

*Dodge*. Rather, it is the minimum confinement consistent with the gravity of the offense, the protection of the public and defendant's need for rehabilitation.

In light of the foregoing it is respectfully submitted judgment of sentence should be affirmed.