# Commonwealth v. Arnold

C.P. of Montgomery County, nos. 8422-08, 8423-08, 1729-09, 4753-09, and 4754-09.

*Robert F. Falin, deputy district attorney,* for Commonwealth.

*Timothy Peter Wile,* for defendant.

ROGERS, *J.*, November 18, 2010—

## I. INTRODUCTION

This is an appeal from the judgment of sentence of a period of twenty to forty years of imprisonment upon appellant Shawn Paul Arnold ("appellant") on December 2, 2009 as a result of appellant's guilty plea to five armed robberies.[1] On 8422-08, appellant was sentenced to a period of imprisonment of ten to twenty years. On 8423-08, appellant was sentenced to a period of imprisonment of ten to twenty years to run consecutive to 8422-08. On 1729-09, appellant was sentenced to a period of imprisonment of ten to twenty years to run concurrent with the sentence imposed at 8423-08. On 4753-09, appellant was sentenced to a period of imprisonment of ten to twenty years to run concurrent with the sentence imposed at 1729-09, and on 4754-09, appellant was sentenced to a period of imprisonment of ten to twenty years to run concurrent with the sentence imposed at 4753-09. In all, appellant was sentenced to two ten to twenty year consecutive sentences for a total of twenty to forty years followed by three ten to twenty year concurrent sentences.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Bill of Information 8422-08*

On Wednesday, October 15, 2008, at approximately 12:57 p.m., members of the Plymouth Township Police Department responded to a call from Citizen's Bank in the Conshohocken section of Plymouth Township for a reported bank robbery. The suspect fled the bank by way

---

1. 18 Pa. C.S.A. §3701 (a)

of the front door before the arrival of the police officers. The individual was described as a white male in his 30's, with facial hair, and weighing approximately 160 pounds. (affidavit of probable cause, p. 5). Citizens Bank's fraud investigator provided the police access to their video surveillance system and still photographs of the suspect. A demand note was recovered which read: "Have gun quiet! Just empty drawer." *Id.*

Officers from Plymouth Township and Whitemarsh Township conducted a joint investigation, which led them to the rear of Plymouth Square Shopping Center where two witnesses saw a subject stop his car and discard a plastic bag in the trees. Officers recovered the bag containing a replica 9mm Glock 17, semi-automatic handgun, a blue baseball cap with a Dodge logo on the front, aviator style sunglasses and a Walmart receipt. *Id.* The Walmart receipt listed a number of purchases made with a credit card, which ultimately led to the identification and arrest of appellant. *Id.*

The officers spoke with the teller at Citizen's Bank who told them that the suspect entered the bank through the front door. He walked around for a few minutes and then came up to her with a checking/money market withdrawal ticket, which said to the best of her recollection "give her (sic) everything you have, I have a gun." *Id.* During this time, the suspect kept telling the teller to be quiet and kept repeating her name. *Id.* The teller did as the suspect requested. She gave him the money and also handed him the bait money. *Id.* The suspect told her to put it back. *Id.* "I don't want a dye back (sic)." He then leaned over the counter to watch what the teller was doing. *Id.* The teller said that the suspect told her to put all the money into an

envelope which she did because she assumed that he had a gun and she was frightened by his actions. A later bank audit showed the actual loss to the bank was $1,631.00. *Id.* After the police investigation linked the credit card to appellant, a photo array was shown to the bank teller who positively indentified appellant as the bank robber. *Id.*

## B. *Bill of Information 8423-08*

On October 2, 2008, members of the Whitpain Township Police Department responded to a 7-Eleven convenience store located at 1710 Swede Street for an armed robbery. (N.T. sentencing hearing, December 2, 2009, p. 22) The victim indicated that the individual responsible for the robbery entered the store, told the victim that he had a gun, showed the gun in his waistband, and then ordered the victim to give him the money. *Id.* The victim estimated that approximately $100 was taken in the robbery. *Id.* The suspect was described as a white male, medium build, wearing a blue "hoodie" (hooded sweatshirt), and a black mask covering his face and brandishing a black semi-automatic handgun. (affidavit of probable cause, p.5)

On October 9, 2008, Upper Merion Township Police Department responded to a panic alarm from a Shell gas station. (N.T. Sentencing Hearing, December 2, 2009, p. 22) The victim was inside the store with a friend when the suspect entered and brandished a black semi-automatic handgun. The suspect pointed the gun at the victim and said, "give me the money." (affidavit of probable cause, p. 5) The victim removed the drawer from the register and the suspect removed approximately $500 - $600 in currency from the drawer. *Id.* The suspect took the store

phone and the victim's cell phone. When the suspect left the store, he discarded the phones nearby. *Id.* The victim gave a description of the suspect that was similar to prior descriptions. (N.T. sentencing hearing, December 2, 2009, p. 23) The suspect was described as a white male, blue eyes, slight blonde facial hair on his cheek area, and wearing a black hooded Adidas sweatshirt, turned inside out, with the hood over his head, a black cloth mask and grey shorts with a black handgun. (Affidavit of Probable Cause, p. 5).

On October 13, 2008, at approximately 1:11 a.m., Plymouth Township Police Department responded to a call from a Lukoil gas station/convenience store on the report of an armed robbery. *Id.* The victim reported a white male entered the store while the victim was in the back of the store. *Id.* When the victim came to the front of the store, he was confronted by a white male wearing a dark colored hooded sweatshirt with a zipper, a dark colored ski mask with the eyes showing only, faded blue jeans, dark colored gloves and brandishing a black semi-automatic handgun. *Id.* The suspect pointed the gun in the direction of the victim and ushered him to the register and ordered him to open it. *Id.* The suspect fled from the store with $438.06. *Id.*

Appellant participated also in several out of county offenses as indicated below.

## C. *Bill of Information 1729-09*

On October 14, 2008, an employee at the Wayne Sunoco station located in Tredyffrin Township reported that a white man came into the station wearing a homemade ski mask and displayed a black semi-automatic

handgun. (N.T. sentencing hearing, December 2, 2009, pp. 23, 24) The masked man demanded money from the register. (N.T. sentencing hearing, December 2, 2009, p. 24) The victim, fearing for his life, gave the robber the $243.00 in cash that was in the register. *Id.* The suspect fled the scene. *Id.* The victim reported that the gun was so close to him that he thought he could see orange at the tip of the gun. *Id.* The victim reported that he thought at first that the gun may be fake but he did not want to take a chance that it was real. *Id.* The suspect said that the robbery scared him and he was visibly shaken by the incident. (affidavit of probable cause, p. 6).

### D. *Bill of Information 4753-09*

On October 12, 2008, members of the Radnor Township Police Department responded to the Sunoco gas station located at 302 East Lancaster Avenue. (N.T. sentencing, December 2, 2009, p. 24) The store employee reported that a white male, 5 foot, 5 inches to 5 foot, 6 inches, average/stocky build, brown eyes, wearing a black ski mask, blue sweatshirt, blue jeans and white sneakers robbed the gas station. (affidavit of probable cause, p. 5). The victim was confronted by the suspect in the office and was told to back away unless he wanted to be shot. *Id.* The victim stepped away, fearing for his life, and the suspect removed $119.00 from the register and ran out the open service/garage door area. *Id.*

### E. *Bill of Information 4754-09*

On September 28, 2008, members of the Radnor Township Police Department responded to the call from the Sunoco A-Plus store located at 301 East Lancaster

Avenue, Wayne, Pennsylvania. (N.T. sentencing hearing, December 2, 2009, p. 25) The store employee said that a white male entered the store, pointed a black handgun and demanded money from the register. (affidavit of probable cause, p. 6) The male was described as between 30-40 years old, approximately six feet tall, wearing blue pants, black hooded Adidas jacket with white stripes down the sleeves and Adidas printed on the front, wearing a black ski mask, black gloves and black shoes. *Id.* The suspect demanded the clerk open the register, at which time the suspect removed $417.00. *Id.* He then demanded that the clerk open the second register and safe but was unsuccessful. *Id.* The suspect fled the scene with the money. *Id.* The victim stated that he was in fear for his safety. *Id.*

On October 16, 2008, appellant was interviewed by Plymouth Township Police Department regarding his involvement in the above robberies. Appellant gave a statement admitting his guilt to these armed robberies. (bill of information 8423-08, affidavit of probable cause, p. 5); (N.T. sentencing hearing, December 2, 2009, p. 9).

Appellant filed his petition for reconsideration of the court's December 2, 2009 sentence on December 8, 2009. An order denying appellant's petition for reconsideration of sentence was docketed on January 28, 2010. On April 27, 2010, the Montgomery County Public Defender's Office filed a motion for leave to file notice of appeal nunc pro tunc. The motion alleged that on Monday, April 26, 2010, appellant sent a letter to the chief of the appellate division of the public defender's office inquiring as to the status of his appeal in the

Superior Court. Appellant indicated that he had been informed in writing that the appellate division would be contacting him regarding his case from this point forward.

The appellate division of the public defender's office indicated that it had no knowledge of appellant's desire to appeal the judgment of the sentence imposed, and the denial of the reconsideration of sentence. The appellate division of the public defender's office averred that appellant's letter of April 21, 2010 was the first indication that appellant desired to take a direct appeal from his judgment of sentence.

The trial court entered an order dated May 5, 2010 entering a rule return date of May 19, 2010 upon the Commonwealth to show cause as to why appellant's motion should not be granted. The Commonwealth responded by letter dated May 10, 2010 indicating it did not oppose appellant's request to have his direct appeal rights reinstated nunc pro tunc. The trial court entered an order dated May 19, 2010 granting appellant's request to file a notice of appeal nunc pro tunc contingent upon said notice being filed with thirty days of the date of the order.

On June 11, 2010, appellant filed a notice of appeal nunc pro tunc accompanied by an order authorizing appellant to proceed on an in *forma pauperis* status pursuant to Pa. R.A.P. 552(d). By order dated June 16, 2010, the undersigned directed appellant to file a concise statement of errors complained of on appeal ("concise statement") with the court, pursuant to Pa. R.A.P. 1925(b)

(1). Appellant's concise statement was timely filed on June 29, 2010.

## III. ISSUES

Appellant presented the following issues in his concise statement:

1. The learned trial court manifestly abused its discretion when it directed the ten (10) to twenty (20) year sentence of imprisonment imposed with respect to appellant Arnold's conviction for the offense of robbery to run consecutively with a previously imposed sentence of ten (10) to twenty (20) years imprisonment at Bill Numbers 8422-08, 1729-09, 4573-09, and 4574-09 for a total aggregate sentence of twenty (20) to forty (40) years in prison in that:

a. The trial court was well aware of appellant's long standing struggle with illicit drugs as set forth in the report of the Malvern Institute (PPI);

b. Appellant's documented issues with illicit drugs began when appellant was only twelve (12) years of age with the casual consumption of alcohol and cocaine and progressed to the point where, at age fourteen (14) years, appellant was using such substances on a daily basis, which use continued until appellant was twenty (20) years of age; and

c. Following treatment, appellant Arnold was able to remain drug-free and alcohol-free for approximate three (3) years, from ages twenty (20) years to twenty-three (23) years;

d. During appellant Arnold's last period of

incarceration, he was confined at the State Correctional Institution at Chester (SCI Chester), which is a facility operated by the Pennsylvania Department of Corrections that is geared to combat drug and alcohol addictions and appellant Arnold successfully completed several drug treatment programmes (sic) while he was confined there.

e. The learned trial court should consider and give significant weight to the clinical impressions provided by Geri A.K. Tomasco, M.A. in that:

i. Appellant Arnold readily accepts responsibility for his actions;

ii. Appellant Arnold recognizes the relationship between addiction and involvement with the law:

iii. Appellant Arnold does not attempt to rationalise, (sic) minimalise (sic) or shift blame for his conduct or behaviour (sic);

iv. Appellant Arnold has demonstrated both internal and external motivation for treatment for his drug and alcohol addition (sic) problems.

f. Appellant Arnold has also actively sought out and attended treatment for his drug and alcohol addiction problems.

## IV. DISCUSSION

The Supreme Court of Pennsylvania has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. *Commonwealth v. Smith*, 543

Pa. 566, 673 A.2d 893, 895 (1996) ("Imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion."). An abuse of discretion is more than just an error in judgment. Thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* In more expansive terms, "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Walls,* 592 Pa.557, 926 A.2d 957, 961 (Pa. 2007) quoting (*Grady v. Frito-Lay, Inc.,* 576 Pa. 546, 839 A.2d 1038, 1046 (2003)). The appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure various factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis,* 700 A.2d 948, 958 (Pa.Super. 1997).

Appellant raises essentially one issue on appeal with multiple subparts challenging the discretionary aspects of his sentence[2]. Issues challenging the discretionary

2. We note that while a guilty plea which includes sentence negotiation ordinarily precludes a defendant from contesting the validity of his or her sentence other than to argue that the sentence is illegal or that the sentencing court did not have jurisdiction, open plea agreements are an exception in which a defendant will not be precluded from appealing the discretionary aspects of the sentence. See *Commonwealth v. Guth,* 735 A.2d 709, 711 n. 3 (Pa.Super. 1999), appeal denied 560 Pa. 699, 743 A.2d 915 (1999); *Commonwealth v. Dalberto,* 436 Pa.Super. 391, 648 A.2d 16, 21 (1994) (when the plea agreement is open, containing no

aspects of sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. "Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004) (citation omitted), appeal denied 580 Pa. 695, 860 A.2d 122 (2004). In the present case, appellant timely filed a motion for reconsideration of sentence on December 8, 2009 in which he argued that the sentence he received was harsh and excessive. As such, appellant's motion for reconsideration of sentence preserved the claims he now raised on appeal. See *McAfee*, 849 A.2d at 275.

We note, however, that the right to appeal the discretionary aspects of a sentence is not absolute. *Commonwealth v. Pollard*, 832 A.2d 517, 525 (Pa. Super. 2003). When an appellant challenges the discretionary aspects of the sentence imposed, he must present a substantial question as to the appropriateness of the sentence. *Commonwealth v. Anderson*, 830 A.2d 1013, 1017 (Pa. Super. 2003). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process...." *Commonwealth v. Mouzon*, 571 Pa. 419, 435, 812 A.2d 617, 627 (2002). Only if an appellant's Rule 2119(f) statement

---

bargain for a specific or stated term of sentence, the defendant will not be precluded from appealing the discretionary aspects of his sentence), appeal denied 540 Pa. 594, 655 A.2d 983 (1995), cert. denied 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 34 (1995).

meets these prerequisites can a determination be made whether a substantial question exists. *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (en banc), appeal denied 563 Pa. 672, 759 A.2d 920 (2000).

Appellant's contention herein addresses the claims regarding his aggregate sentence. Long standing precedent recognizes that 42 Pa.C.S.A. Section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences previously imposed. *Commonwealth v. Graham*, 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995). Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. *Commonwealth v. Johnson*, 873 A.2d 704, 709 n. 2 (Pa. Super. 2005); see also *Commonwealth v. Hoag,* 445 Pa. Super. 455, 665 A.2d 1212, 1214 (Pa. Super. 1995) (explaining that a defendant is not entitled to a "volume discount" for his or her crimes).

A decision by the Superior Court in *Commonwealth v. Dodge*, 859 A.2d 771 (Pa. Super. 2004), does not alter this conclusion. In fact, the panel in *Dodge* noted the limitations of its holding. See *id.* at 782 n. 13 (explaining that its decision "is not to be read as announcing a rule that a challenge to the consecutive nature of sentences always raises a substantial question or constitutes an abuse of discretion. We all are cognizant that sentencing can encompass a wide variation of factual scenarios. Thus, we make clear again that these issues must be examined and determined on a case-by-case basis.")

In *Dodge*, the court imposed consecutive, standard

range sentences on all thirty-seven counts of theft-related offenses for an aggregate sentence of 58 1/2 to 124 years of imprisonment. Thus, the key to resolving the preliminary substantial question is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case.

While in extreme cases, such as those found in *Dodge*, this exercise of discretion could be viewed as raising a substantial question. Here, however, in the instant matter, the facts simply do not inure to such a finding. Appellant took part in what could be described as a "crime spree" which involved five robberies. In all, numerous individuals were terrorized during this spree and numerous lives endangered. In fashioning appellant's sentences, the undersigned noted appellant's extensive criminal history, including prior armed robbery convictions in which appellant received a 5 to 10 year sentence of imprisonment and was on parole at the time of the instant offenses, and further made observations regarding the dangerous consequences of appellant's conduct. The undersigned also emphasized the need to protect the community from appellant's actions. Hence, the court found that the instant facts do not raise a substantial question.

At sentencing, the undersigned had the benefit of a pre-sentence investigation report and PPI report as well. (N.T. sentencing hearing, December 2, 2009, p. 3) As such, the undersigned "was aware of the relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors."

*Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004). The undersigned further placed the reasons for the sentence on the record listing seriatim the five bills of information that involve eight different offenses. In constructing the sentence, the court considered the pre-sentence investigation report along with the addictions involved, appellant's prior record, his prior conduct, as well as the fact that this sentence would likely be increased by the Pennsylvania Board of Probation and Parole as a result of appellant's violation of his supervision. (N.T. sentencing hearing, December 2, 2009, pp. 35, 36)

Appellant makes no claim that the sentence imposed was outside of the statutory limits or outside of the sentencing guidelines.

### V. CONCLUSION

Accordingly, for all of the foregoing reasons, we respectfully request that the judgment of sentence imposed on appellant on December 2, 2009 should be affirmed.