J-S75019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JIMMY LEE WILSON | |
| Appellant | No. 232 EDA 2014 |

Appeal from the Judgment of Sentence October 31, 2013
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003317-2013

BEFORE:  ALLEN, J., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 02, 2015**

Jimmy Lee Wilson appeals from his judgment of sentence, imposed by the Court of Common Pleas of Bucks County, following his convictions for five counts of criminal conspiracy[1] and one count each of:  attempted theft by extortion,[2] criminal use of a communication facility,[3] and terroristic threats.[4]  Upon review, we affirm.

This matter arises from a home invasion that occurred in Levittown, Bucks County.  Wilson planned to burglarize the home of Thomas and Kecia

_____

[1] 18 Pa.C.S. § 903(c).

[2] 18 Pa.C.S. § 3923(a)(1).

[3] 18 Pa.C.S. § 7512(a).

[4] 18 Pa.C.S. § 2706(a)(1).

Hall because he believed there would be a significant amount of cash in the house due to Mr. Hall's involvement in football pools. Wilson convinced his co-conspirator, Kalyn Walker (Walker), to help him execute the robbery. Prior to this, Walker did not know anything about the Hall family, except for a familiarity with Mr. Hall's identity. During trial, it was discovered that Wilson's father and Mrs. Hall were distant cousins and that Wilson had been to the Halls' home for family barbeques.

On the night of Saturday, February 23, 2013, Walker picked up Wilson in his white Crown Victoria. Wilson gave Walker a black drawstring bag containing rope as well as .45 semi-automatic pistol. Upon arriving at the Hall residence, Wilson and Walker parked down the street. Walker entered the residence while Wilson waited in the car.

Meanwhile, Turquoise Hall, the Halls' then seventeen year-old daughter, was home alone. Around 10:30 p.m., Turquoise heard a knock at the front door. When she opened the door she saw Walker, who was dressed in black and was wearing a black half-mask while holding a gun. Walker told Turquoise not to scream and that it was "OK." As Turquoise backed up, Walker entered the residence.

Once inside, Walker instructed Turquoise to show him her parents' bedroom. Walker proceeded to search the bedroom, but was unsuccessful in finding any money. Shortly thereafter, Mr. and Mrs. Hall returned home. Walker instructed Turquoise to act normally while Walker hid in the kitchen.

The Halls entered their home and proceeded to walk into the kitchen, where Walker was hiding. Upon encountering each other, Walker pointed his gun at Mrs. Hall, told her to get on the floor, and demanded that everyone empty their pockets. Walker then ordered Mrs. Hall to bind Turquoise's hands and then had Mr. Hall bind Mrs. Hall's hands with the same rope. Walker led the mother and daughter into the bathroom.

Walker then took Mr. Hall into the Halls' bedroom and demanded $10,000.00. Mr. Hall explained that he did not have that amount of cash in the residence. Walker searched the bedroom once more while continuously pointing his gun at Mr. Hall. Satisfied there was no cash, Walker instructed Mr. Hall to untie his shoes and bind his own hands.

Walker then stated that on the following Monday at 5:30 p.m., Mr. Hall better have $10,000.00 or he was going to kill Mrs. Hall and Turquoise. Walker instructed Mr. Hall to drop the money in a black bag in a dumpster at the Levittown Trace apartments in Bristol Township. Before leaving, Walker reminded Mr. Hall that his wife and kids "were gonna get it," if he did not have the money. Because Walker instructed Mr. Hall not to the call the police, he did not do so immediately out of fear for his family.

On the morning of Monday, February 25, 2013, Walker and Wilson went to a WaWa store to purchase a phone card so that Walker could use his disposable flip-phone. Wilson and Walker then decided to change the plan and called Mr. Hall to inform him that the drop-off time was now 12:00 p.m.

Following this call, Mr. Hall went to Wal-Mart to obtain a black bag. He also went to the credit union to get a hundred dollars in denominations of one-dollar bills. Mr. Hall planned on putting the cash in the black bag and dropping it at the dumpster. Thereafter, he met up with his cousin and the two of them drove towards Levittown Trace apartments.

Because Mr. Hall did not make the 12:00 p.m. drop-off, Wilson and Walker decided to increase the amount of money demanded. They informed Mr. Hall via text message that the amount had increased to $15,000.00. Upon receiving this text, Mr. Hall notified the police. While Mr. Hall was giving his statement, he continued to receive calls and text messages from Wilson and Walker, which grew increasingly menacing as the day went on. Between 4:30 p.m. and 5:00 p.m., Mr. Hall received two text messages, typed by Wilson, which stated: "[…] If you don't make it, just hide your kids. I will go to one of the college[s] tonight. I got a picture of all four of your kids. And I'm not waiting until tomorrow, so get that money," and "Fuck it. I'm gonna put you through hell. You going to wish you paid that money." N.T. Trial, 9/30/13, at 189-90.

Shortly thereafter, Mr. Hall, accompanied by several officers of the Bristol Township Police Department, went to the Levittown Trace apartments and put the black bag in the dumpster. A few minutes later, Wilson and Walker arrived in Walker's white Crown Victoria and parked in the parking lot across the street. Walker exited the vehicle and scanned the parking lot. Walker observed a plainclothes police officer and, believing him to be a

security guard; Walker and Wilson left the lot and drove into the back of the Levittown Trace apartment complex. Walker parked and exited the vehicle, while Wilson remained inside. Walker then approached the dumpster and retrieved the black bag. At that point, the police intercepted and arrested Walker. Another officer arrested Wilson immediately thereafter.

Trial began on September 30, 2013, and concluded on October 4, 2013. The jury found Wilson guilty of the aforementioned offenses and, on October 31, 2013, sentenced him to an aggregate term of 12 to 37 years' imprisonment. At the time of sentencing, Wilson had a prior record score of 5.[5]

On November 12, 2013, Wilson, through counsel, filed post-trial motions, which included a motion to reconsider sentence. On December 17, 2013, the court held a hearing on Wilson's post-trial motions and granted, in part, his motion to reconsider sentence. The court vacated its sentence on the attempted theft by extortion conviction and imposed a new sentence of 6 months' to 5 years' incarceration. This reduced Wilson's aggregate sentence to 11 to 37 years' imprisonment. This timely appeal followed.

On appeal, Wilson claims his sentence is excessive and thus challenges the discretionary aspects of his sentence. A challenge to the discretionary

---

[5] Wilson's prior record score was 5 based on a prior juvenile robbery conviction from when he was 15 years old as well as a felony possession with intent to deliver conviction from when he was 18.

aspects of a sentence is not appealable as of right. Rather, an appellant must petition for allowance of appeal pursuant to 42 Pa.C.S. § 9781.

***Commonwealth v. Hanson***, 856 A.2d 1254, 1257 (Pa. Super. 2004).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013) (citations omitted).

Here, Wilson has filed a timely appeal and preserved this issue by filing a post-sentence motion for reconsideration of sentence. He has also included in his brief a statement pursuant to Pa.R.A.P. 2119(f), in which he claims, *inter alia*, that the court erred when it failed to explain a sentence that exceeded the aggravated range of the sentencing guidelines. This Court has previously found that a claim that the sentencing court imposed a sentence outside of the guidelines without specifying sufficient reasons presents a substantial question for our review. ***See Commonwealth v.***

***Holiday***, 954 A.2d 6, 10 (Pa. Super. 2008). Thus, we review the merits of Wilson's challenge to the discretionary aspects of his sentence.

Our standard of review is well established:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Mastromarino***, 2 A.3d 581, 589 (Pa. Super. 2010).

In every case where the court imposes a sentence outside the guidelines, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. ***See*** 42 Pa.C.S. 9721(b). Failure to comply shall be grounds for vacating the sentence and resentencing the defendant. ***Id.*** For the offense of conspiracy to commit robbery, the sentencing guidelines call for a standard range sentence of 4 to 5 years, and in the aggravated range, 6 years. Here, the court sentenced Wilson to 8 to 20 years on the count of conspiracy to commit robbery. Wilson asserts that the court failed to explain its deviation from the guidelines, however, the record belies this claim.

At sentencing, the Honorable Albert J. Cepparulo stated:

When I sentence you today, I want you to understand, Mr. Wilson, that the sentences are driven by the terror that you visited upon this family that night, they are also driven by my desire to offer that family and every other family who lives a peaceful life, protection from you specifically for as long a period

as I can. I will deviate from those guidelines in one of the matters based on the statements I have made here today, the victim's statements here today, the facts of this abominable crime, and the responsibility that you bear.

N.T. Sentencing, 10/31/13, at 24. Judge Cepparulo further explained his reasons for deviating from the guidelines at Wilson's hearing on his motion for reconsideration of sentence.

[T]his was beyond aggravated because it involved at least three victims. It was also a case where you actually knew the family and set up this robbery, burglary, knowing that the family had some money. This is a case where you convinced a much younger, immature man to commit a really serious home invasion. And I am convinced beyond a doubt that it was you who convinced him and not the other way around.

I give some credence to the fact that you had three robberies as a juvenile, but I give equal credence to the fact that throughout the next ten years as an adult, there were no convictions.

I did consider, of course, that this case had a wide-ranging community impact for anyone who lived in a home. People think that their home is their safe haven; that when they come home from work, they shut the door, they may even lock the door, but that's it. That's the end of the outside. Now you're with family or friends, and that's it. But you made that a false sense of security. You changed the Halls, their lives, forever.

N.T. Reconsideration of Sentence Hearing, 12/17/13, at 17-19.

As the record shows, Judge Cepparulo explained his reasons for deviating from the guidelines when sentencing Wilson on the count of conspiracy to commit robbery. Accordingly, we discern no error by the sentencing court.

Wilson further argues that the court abused its discretion when it relied primarily on the nature of the crime and its impact on the victims in fashioning its sentence. We also find this assertion belied by the record. In

- 8 -

addition to the nature of the crime and the impact on the victims, Judge Cepparulo also considered the need to protect the public, the fact that Wilson had not committed a crime in 10 years, and his rehabilitative needs.

Wilson also claims that the court erred when it imposed consecutive sentences on the counts of terroristic threats, unlawful use of a communication facility, and attempted theft by extortion. Wilson asserts that ordering the sentences to run consecutively resulted in an excessive sentence in light of the criminal conduct at issue in this case.

Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal. **Commonwealth v. Marts**, 889 A.2d 608 (Pa. Super. 2005). However, this Court has found that a substantial question is raised where a decision to sentence consecutively increases the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case. **See Commonwealth v. Dodge**, 859 A.2d 771 (Pa. Super. 2004), **vacated and remanded on other grounds**, 935 A.2d 1290 (Pa. 2007), (appellant sentenced to 58 ½ to 124 years' imprisonment after convicted of numerous, largely property offenses, i.e., 37 counts of receiving stolen property, two counts of burglary, criminal trespass, etc.).

Here, the facts simply do not support such a finding of excessiveness. Wilson orchestrated a serious home invasion that lasted for several days. He provided Walker with the rope and the gun used to tie up and terrorize

the Halls. Wilson also sent many of the threatening text messages to Mr. Hall. Accordingly, Wilson fails to raise a substantial question with this argument. ***Marts***, ***supra***.

In his last argument, Wilson claims that the sentencing court abused its discretion in imposing an aggregate sentence that was grossly disparate when compared to his co-defendant's sentence. The law is well-settled that co-defendants are not required to receive identical sentences. Generally, a sentencing court must indicate the reasons for differences in sentences between co-defendants. ***See Mastromarino***, 2 A.3d at 589.

Here, the court explained that it sentenced Wilson as it did because he was the mastermind of the conspiracy. Further, the court noted that Wilson did not appear to reflect on his crimes or show any remorse, nor did he take responsibility for his actions leading up to and during the home invasion. Trial Court Opinion, 4/15/14, at 38. Accordingly, we discern no abuse of discretion. ***Mastromarino***, ***supra*** (no abuse of discretion where defendant was "mastermind" behind heinous criminal conduct and court thoroughly considered defendant's circumstances and explained court's reasons for disparity sentences).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/2/2015</u>